No. 35,565

WICHITA FEDERAL SAVINGS & LOAN ASSOCIATION, *Appellant*, v. HERBERT C. JONES et àl., *Appellees;* THE ADVANCE FURNACE COMPANY et al., *Cross-appellants*.

(130 P. 2d 556)

Opinion filed November 7, 1942.

*A. V. Roberts,* of Wichita, argued the cause, and *Paul W. Schmidt* and *Verne Roberts,* both of Wichita, were on the briefs for the appellant.

*K. W. Pringle* and *Wayne Coulson,* of Wichita, argued the cause, and *C. H. Brooks, Howard T. Fleeson* and *Paul R. Kitch,* all of Wichita, were on the briefs for the appellees.

*Lloyd F. Cooper,* of Wichita, argued the cause, and *Roy B. Darlington,* of Wichita, was on the briefs for the cross-appellants.

The opinion of the court was delivered by

THIELE, J.: This was commenced as an action to foreclose a mortgage on real estate. Certain defendants held mechanic's liens on the lands involved. From a judgment allowing two mechanic's lienholders prior liens the mortgagee appeals. Two other mechanic's lienholders appeal insofar as their claim of lien on additional real estate was denied. The amounts for which various liens were allowed are not now in dispute.

The plaintiff filed its petition alleging that three defendants, each surnamed Jones and hereafter called mortgagors, had executed and delivered to it their promissory note, dated December 4, 1939, for the sum of $6,800 payable in monthly installments, and that default had been made, and that the amount due and declared upon was $5,015.11, plus a penalty of two percent amounting to $100.30;

that to secure the note the mortgagors had executed and delivered a mortgage to plaintiff on "the west 180 feet of the south 214 feet of lot nineteen (19), in Westfield Acres," etc., and that certain named defendants claimed an interest in the real estate, but whatever their claims, they were inferior to that of plaintiff. It prayed for personal judgment against the mortgagors for $5,115.41 and interest, for the foreclosure of its lien, and that it constituted a first lien, etc.

The defendant United Brick & Tile Company, hereafter referred to as the Tile Company, filed its answer and cross petition setting up its lien in the amount of $970.40. This answer alleged in detail that before it furnished materials, it had ascertained the plaintiff had received and recorded its $6,800 mortgage and by reason thereof it furnished materials on a credit basis because it expected to be paid out of the proceeds of the loan; that the amount advanced by plaintiff was approximately $5,000; that if plaintiff had complied with its agreement with the mortgagors concerning which the Tile Company had been advised and upon the terms of which it extended credit, its bill would have been paid in full, and that because of the facts alleged plaintiff was estopped to assert its lien was prior to that of the Tile Company. We need not notice other allegations. It prayed for foreclosure and that its lien be declared a first lien on the real estate.

The defendants McClarens, doing business as S. B. McClaren & Son Lumber Company, and hereafter referred to as the Lumber Company, filed an answer and cross petition similar to that of the Tile Company but alleging direct inquiry of plaintiff as to the loan and assurance the proceeds would be available to pay for labor and materials. The Lumber Company prayed for foreclosure of its mechanic's lien and that its lien be declared a first lien.

Answers and cross petitions were also filed by the Advance Furnace Company, hereafter called the Furnace Company, and by Richard LaFoy, doing business as Richard LaFoy Plumbing and Heating Company, hereafter called the Plumbing Company. Both defendants sought to foreclose their mechanic's liens. The mortgagors answered admitting execution of the note and mortgage, and alleged plaintiff had failed to pay them approximately $1,800 of the amount of the note.

The pleadings of other defendants are not material to this appeal.

A trial was had and judgments rendered. The journal entry of judgment is somewhat involved, but the net result was that all the

liens were foreclosed. The Tile Company was given judgment for $1,059.47, the Lumber Company for a total of $704.57, the plaintiff for $5,273.97, the Furnace Company for $381.56, and the Plumbing Company for $666.90, all of these judgments being against the mortgagors and to bear interest from date of the judgment. The lien of the plaintiff was adjudged to be a first lien but subject to the liens of the Tile Company and the Lumber Company, which were declared of equal priority, and the liens of the Furance Company and the Plumbing Company were of equal priority and subject to the three liens first mentioned. The several parties in interest filed motions for new trials, all of which were denied.

The plaintiff, hereafter called the appellant, appeals. During the course of the trial the Furnace Company and the Plumbing Company obtained leave to amend so that their liens would cover real estate additional to that described in the mortgage, and as more fully mentioned later. They were denied relief as to the additional real estate. They also appeal, the substance of their complaint being they were not given a lien on the additional real estate.

The substance of appellant's contentions is that under the decisions of this court it was entitled to an unlimited and unrestricted first lien on the mortgaged real estate and that it was not estopped from claiming and being allowed such lien.

As a preliminary it is observed that appellant did not advance to the mortgagors the entire proceeds of the mortgage loan, and while it claims a first lien, the amount thereof is limited to the advances it actually made plus a two-percent penalty provided in its note.

In support of its contention that it is entitled to priority, appellant directs our attention primarily to the early case of *Martsolf v. Barnwell*, 15 Kan. 612, where it was held that the lien of a real-estate mortgage for a single amount and duly recorded prior to the commencement of improvements was prior to a mechanic's lien, it there appearing the mortgage made no provision for advance payments and only a small portion had been advanced prior to commencement of the work. That holding was approved in *Security Stove & Mfg. Co. v. Sellards*, 133 Kan. 747, 3 P. 2d 481. In the Barnwell case there is nothing in the briefs as summarized in the reports nor in the opinion that indicates the full proceeds of the loan were not paid to the mortgagor. In the Sellards case two mortgages were involved. Under one the full amount of the mortgage was paid, and mechanic's lienholders appealed from that part

of the judgment denying them priority. They sought to have this court overrule the Barnwell case, which the court refused to do. Under the other mortgage the full amount had not been paid, but priority was denied for other reasons which need not be noted. But even though we give full effect to the rule announced in the two cases mentioned, it cannot be said they are decisive of appellant's rights to a first lien. We must consider also whether appellant's course of conduct estopped it to claim priority, and what effect its failure to pay the full proceeds of the loan had upon the rights of the lien claimants.

In the briefs we have many citations to authorities dealing with the doctrine of equitable estoppel. Appellant directs our attention to *Gray v. Zellmer,* 66 Kan. 514, 72 Pac. 228, where it was held:

"The doctrine of equitable estoppel does not operate in favor of one who has knowledge of another's rights, or who has convenient and available means of obtaining such knowledge." (Syl. ¶ 2.)

Appellant also calls attention to the definition of equitable estoppel set forth in *Schott v. Linscott,* 80 Kan. 536, 539, 103 Pac. 997, while appellee directs our attention to *Gas Service Co. v. Consolidated Gas Utilities Corp.,* 145 Kan. 423, 435, 65 P. 2d 584, where a quotation from 10 R. C. L. 689, is cited approvingly.

In 31 C. J. S. 236, equitable estoppel is defined thus:

"Equitable estoppel or estoppel by misrepresentation is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct; and it arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts." (§ 59.)

In 19 Am. Jr. 634, the term is defined as follows:

"Equitable estoppel or estoppel *in pais* is a term applied to a situation where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact. Any more exact or complete definition than this is difficult to formulate for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case, and consequently, any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances." (§ 34.)

And in the same volume at page 637, in treating of its function, it is stated:

"The proper function of equitable estoppel is the prevention of fraud, actual or constructive, and the doctrine should always be so applied as to promote the ends of justice and accomplish that which ought to be done between man and man." (§ 39.)

In *Golden Belt Lbr. Co. v. Klinzman,* 138 Kan. 877; 28 P. 2d. 736, the seller of the real estate claimed his purchase-money mortgage had priority over a mechanic's lien for improvements which were commenced before the mortgage was recorded. The mechanic's lienholder contended the seller was estopped to claim priority by reason of his conduct, and it was held:

"While it is the general rule that a mortgage to secure the purchase price, given at the time the property is acquired and as a part of the entire transaction, takes precedence over prior judgments and existing and subsequent liens against the mortgagor, such a mortgage is subordinate to liens for improvements authorized by the mortgagee or done with his knowledge and consent, or where, by his acts and conduct, he has estopped himself to assert priority." (Syl.)

Without going into the details thereof, the evidence disclosed that before the Tile Company extended credit and furnished materials it investigated and learned that appellant had placed on record a mortgage for $6,800, the proceeds of which were to be used to pay for improvements, and that the reason it was not paid was because of the failure of appellant to pay to the mortgagors the full amount of the loan. The Lumber Company presents a stronger case. It made direct inquiry of appellant and was assured the loan had been made and the proceeds would be available to pay labor and material claims. Further than that, an exhibit offered by appellant showed that between December 9, 1939 (five days after date of its note), and July 31, 1940, it issued twenty-three checks disbursing part of the loan and that eighteen of them were made to one of the mortgagors and the contractor or some other person jointly, and that thereafter only two checks bore the name of any of the mortgagors, the others being payable to persons who furnished labor or materials on the job. These various checks totaled $5,015.11, and with the two-percent penalty added constituted the amount for which appellant sought judgment. The appellant refused to pay out the balance of the loan either to the mortgagor or to the materialmen.

We are of opinion the materialmen, in seeking information as to the source from which they were to be paid, and in learning that a mortgage had been made for the purpose of financing construction, had a right to rely thereon, at least to the extent that the amount of

the loan would be advanced, whether they received it or not. The Lumber Company is in a stronger position, for it made specific inquiry and was assured the proceeds would be so used. Of course, if the loan had been fully paid, but the materialmen had not, they would not have been entitled, for the appellant would have fully performed. No doubt at the time the loan was made and the mortgage recorded, the appellant expected to perform fully. That does not mean, however, that its subsequent failure to do so was not inequitable to the materialmen who were furnishing materials under the belief there would be moneys available to pay them. There is no claim the materialmen are responsible for appellant's failure to perform fully, and the record is barren as to the reason appellant did not advance the full payment.

Appellant argues that its failure to advance more than it did has not prejudiced the materialmen, that its lien is only for the amount advanced and not the face of the note, and that its judgment and lien being smaller, the value of the interest to which mechanic's liens would attach is greater. In one sense that would be true, but in another it would not. The materialmen acted on the assumption they would be paid from the proceeds of the loan—not that they would have to perfect and foreclose mechanic's liens. Had the full proceeds of the loan been advanced, the mortgagors would have had ample funds to pay the Tile Company and the Lumber Company, and the mortgagor Herbert C. Jones testified he would have done so. The practical effect of the trial court's judgment was to place the parties in the position they would have occupied had the appellant performed its agreement fully. The representations of the appellant as to the amount it was loaning were of a material fact, and known to it, the materialmen had a right to rely on the representations, it was naturally to be expected they would rely on them, they did rely on them, furnished materials on credit they stated they would not otherwise have furnished, and by reason thereof they changed their positions for the worse. The very method in which appellant disbursed such portions of the sum loaned as it did, shows that it was carrying out, in part, the very thing it assured the Lumber Company it would do.

After full consideration we have concluded the trial court did not err in determining the priority of the several liens.

Taking up the appeals of the Furnace Company and the Plumbing Company, it is noted that their original mechanic's lien statements

claimed a lien only on the real estate as described in the mortgage noted above. During the course of the trial it developed that the defendant Herbert C. Jones, one of the mortgagors, had contracted in writing to purchase a tract described as the west 180 feet of lots 19 and 20 on Westfield avenue in Westfield addition, being the larger tract of which the first described tract is a part, for a total consideration of $850, the seller agreeing to convey the portion of each lot separately upon payment of one-half of the total consideration. The written contract was at first admitted but was later stricken from the evidence for the reason the mortgage registration tax had not been paid. We need not determine whether or not this ruling was correct. The defendant Jones testified orally to the arrangement that he had received a deed to the tract included in the mortgage and had paid all but $200 of the total consideration for the entire tract; that his purpose in getting the entire tract was "principally so I could pick out my neighbors if, as, and when I saw fit to have them," and that he might build on it, sell it, let others build, or keep it himself. With this evidence before the court the appealing parties were permitted to amend their lien statements and pleadings. The mortgagors have filed no abstract showing any additional testimony and no brief in support of the judgment so far as it is in their favor. From the evidence as abstracted it appears the improvements made were to the entire tract and not merely to that portion to which the mortgagors had received a deed. It has been held on many occasions that a mechanic's lien may attach to the owner's equitable interest in real estate. (See *Ehrsam & Sons Mfg. Co. v. Rice,* 153 Kan. 483, 112 P. 2d 95, and cases cited.) Under the evidence the Furnace Company and the Plumbing Company were entitled to coördinate liens, not only on that portion of the real estate the legal title of which was in the mortgagors, and as adjudged by the trial court, but to coördinate liens on the equitable interest of the mortgagors in the remainder of the tract. No other lienholder appealed from this phase of the litigation, and their liens are only as adjudged by the trial court.

Insofar as the appeal of the plaintiff association is concerned, the judgment of the trial court is affirmed. Insofar as the appeals of the Furnace Company and the Plumbing Company are concerned, the judgment is reversed and the cause remanded to the trial court with instructions to extend their liens consistent with this opinion.