272 P.2d 583

**KIMBALL ELEVATOR CO., Inc.,**

v.

**ELEVATOR SUPPLIES CO., Inc.**

No. 8066.

Supreme Court of Utah.

July 21, 1954.

Rehearing Denied Oct. 27, 1954.

Paul E. Reimann, Salt Lake City, Howard J. Cantus, New York City, for appellant.

290

Andrew John Brennan, Salt Lake City, for respondent.

CROCKETT, Justice.

The defendant, Elevator Supplies Company, was the successful bidder on a contract to modernize and install elevators in the Hotel Utah. The plaintiff, Kimball Elevator Company, an unsuccessful bidder on the job, brought this action for breach of contract, claiming the defendant had agreed that it would not compete in the bidding.

From a jury verdict and judgment thereon awarding plaintiff $17,085 damages, defendant appeals, contending:

1. That the evidence does not support a finding of an agreement not to compete with the plaintiff, and

2. Even if there were sufficient evidence, such a contract would be void as against public policy because it would be an agreement to perpetrate a fraud upon the Hotel Utah.

Kimball concedes that it does not have an express contract, but relies solely upon the proposition that by virtue of the dealings and conduct of the parties, there was an implied agreement on the part of Elevator Supplies that it would not compete with Kimball in bidding for the Hotel Utah job.

Both Kimball and Elevator Supplies have been in the elevator business for many years, plaintiff with headquarters in Salt Lake City; defendant operating in San Francisco. Over a period of 23 years, Kimball has been the original contractor on seven elevator modernization projects in connection with which it sub-contracted part of the work with respect to the installation of controls to Elevator Supplies. On such jobs, Kimball would base its total bid partly on the price quoted to it by Elevator Supplies for that portion of the contract; and with respect to the latter, it did not ask for quotations from other competing companies, but accepted Elevator Supplies' price.

In November, 1947, Mr. Connole, Kimball's manager, wrote to Elevator Supplies, saying that the Hotel Utah wanted a bid on the renovation of its elevators. As usual, Kimball asked no one else for bids on the control equipment. Elevator Supplies forwarded a quotation on it. Many months later on August 16, 1950, plaintiff submitted its bid to the Hotel Utah. Shortly thereafter, the Hotel engineer, Mr. Jerry Smith, asked plaintiff's Mr. Connole if he had any suggestions as to other companies which might desire to bid and particularly inquired if Elevator Supplies would make a bid on the total job. Mr. Connole stated that such a bid would be on identical equipment and that the Hotel Utah could use it as an estimate to see if the Kimball bid was in line. He then called Roy Smith, manager of Elevator Supplies in San Francisco, and advised him that the Hotel Utah would like a bid on the over-all job to verify the plaintiff's price. It is plaintiff's position that these circumstances show that the bid was to be simply what it calls a "check bid" for

the purpose of getting a comparison on the general range of Kimball's price, but that it was not to be competitive to plaintiff's quotation. However, the next day the Hotel Utah called Elevator Supplies and asked for a bid on the entire job, in response to which the defendant submitted a firm bid, which was accepted.

When plaintiff failed to get the job, it first claimed a commission from the defendant, which claim was rejected. This action was then commenced, based not upon such claim for a commission, but grounded upon the contention that the defendant Elevator Supplies agreed not to compete with plaintiff, and that it breached such agreement by doing so, which caused plaintiff to lose the job and the profits thereon, and to suffer certain other damages for loss of the value of advertising which would have accrued from having their name plates on the elevators in the Hotel Utah.

As will be seen from the foregoing, the basis upon which Kimball seeks to make out a promise on the part of Elevator Supplies not to submit a competitive bid is nebulous indeed. It may be that because of the prior dealings between the parties over a period of twenty-three years, and the confidence and trust built upon between them, Kimball did not expect Elevator Supplies to bid against it in such a manner as to take the job away. From Kimball's evidence, it seems to have assumed that any bid submitted by Elevator Supplies would be so much higher than Kimball's that the job would be awarded to Kimball. However, Elevator Supplies made no direct promise not to submit a competitive bid and the only basis in the evidence from which any assent on its part not to do so could even be inferred is found in the testimony of Mr. Henker, of Pacific Elevator and Electric Equipment Company, concerning a conversation with Roy Smith of Elevator Supplies Company, in part: "I think we talked about it with the idea that they [Hotel · Utah] wanted two bids. In other words, they only had one bid and they wanted two bids, which would let them know about where they stood, I imagine, with their first bid * * * the best I can recall, Roy had the same impression that that [the bid to be made by the defendant] was a bid, a check bid, and naturally it was going to be higher, being out of San Francisco. * * *"

Defendant's counsel made a motion to strike out the testimony just quoted on the grounds that the witness was giving impressions rather than facts. The motion was denied by the trial judge. This was error. Mr. Henker was testifying as to the state of mind of Roy Smith and such evidence is incompetent. It would have been permissible for Mr. Henker to have recited the statements of Roy Smith, or their substance. But it was incompetent for Mr. Henker to presume to say what the latter had in his mind regarding the bid desired by the Hotel Utah.[1]

1. Reese v. Morgan Silver Mining Co., 17 Utah 489, 54 P. 759.

Even if this testimony had been elicited in such a manner as to be competent, that is, as statements made by Roy Smith, at best it would have shown only that he knew that the plaintiff wanted Elevator Supplies to make such a check bid, but would have fallen far short of amounting to a promise that his company would do so.

 It is of course conceded that a contract may be made out even though there be no express words formally stating it, and that the promise may be inferred wholly or in part from such conduct as justifies the promisee in understanding that the promisor intended to make it.[2] Nevertheless we fail to see how, taking all of the evidence and every reasonable inference that may fairly be derived therefrom in the light most favorable to the plaintiff, as we are obliged to do,[3] a finding that Elevator Supplies made any such promise in the instant case can be supported. Likewise we find no circumstances here from which it could reasonably be concluded that silence or inaction with respect to such request amounted to an acceptance.[4]

 There is also merit in defendant's contention that if there had been such an agreement between plaintiff and defendant it would have been against public policy and void. In controversion of this, Kimball argues that it had a perfect right to exact a covenant from Elevator Supplies that it would not compete, in consideration of an understanding that Kimball would sub-let part of the work to Elevator Supplies; and further that it is not only permissible but common practice for a wholesaler to contract not to sell to retail customers. With these principles we do not disagree but the fact situation here does not come within their ambit.

 The Hotel Utah indicated that it wanted another bid and there is no showing that it expected or desired anything other than a bona fide one. It is difficult to see what advantage would have come from a bid arbitrarily fixed at several thousand dollars higher than the Kimball bid as plaintiff claims it was to be. Kimball itself requested Elevator Supplies to bid and thus of course knew that it was doing so, but neither exacted a promise from defendant that the bid would be excessive, nor advised the Hotel Utah that the bid would be anything other than an honest bid on the job. If such promise had been made, so that the Elevator Supplies was not free to make a truly competitive bid, it would have been highly improper for plaintiff to refer the Hotel Utah to Elevator Supplies for a bid without disclosing such fact to the Hotel Utah. Since no such disclosure was made, it must follow that even if plaintiff had established such a contract it would have

2. Restatement of Contracts, Sec. 5.

3. Hoyt v. Wasatch Homes, Inc., 1 Utah 2d 9, 261 P.2d 927.

4. 12 Am.Jur. 533, 534.

been a fraud against the Hotel Utah and consequently unenforceable.[5]

Judgment reversed. Costs to appellant.

McDONOUGH, C. J., HENRIOD and WADE, JJ., and JOSEPH E. NELSON, District Judge, concur.

WOLFE, C. J., being disqualified, did not participate in the hearing of this cause.

5. Corbin, Contracts, Sec. 1468. See 5 Williston, Contracts, Sec. 1663.