289 P.2d 1045

FARMERS and MERCHANTS BANK, a corporation, Plaintiff and Respondent,

v.

UNIVERSAL C. I. T. CREDIT COR-PORATION, Defendant and Appellant.

No. 8282.

Supreme Court of Utah.

Nov. 10, 1955.

George E. Bridwell, Salt Lake City, for appellant.

Elias Hansen, Salt Lake City, J. Rulon Morgan, Provo, for respondent.

McDONOUGH, Chief Justice.

In October, 1952, Universal C.I.T. Credit Corporation undertook to finance the operation of Harry Parsley, Inc., a Lincoln-Mercury dealer in Provo, Utah. Both retail and wholesale financing was provided for in the agreement between the dealer and the finance house, the arrangement being that the contract of sale for the automobile was to be enclosed and sealed in an envelope, the face of which was a sight draft on Universal C.I.T., and Harry Parsley was authorized to draw against that company in the amounts represented by the contracts. Respondent bank was authorized to treat these drafts as cash by a verbal agreement with appellant Universal C.I.T.

These arrangements continued unquestioned by any of the parties until December 24, 1952, when an officer of C.I.T. instructed the bank that it was not to treat sight drafts for wholesale financing as cash from that date forward. There is a conflict in the evidence as to the agreed means of discovering whether a particular draft repre-

sented a wholesale or retail deal; but, at any rate, the bank continued giving immediate credit to the Parsley account upon receipt of drafts and allowing checks to be drawn against that credit. On January 6, 1953, C.I.T. instructed the bank that no more drafts drawn by Parsley would be accepted by the corporation. Thirteen drafts dated January 5 and 6, totalling $29,223.65 were credited to the account of Harry Parsley, Inc., in accordance with an oral promise by an officer of the defendant corporation that retail drafts in process up to the close of business on January 6, 1953, would be honored.

Likewise, on January 6, the defendant presented and received payment for ten checks drawn in favor of the corporation on the Parsley account to the amount of $24,668.03. On January 7, further representations that the drafts would be paid were made by members of the staff of defendant corporation. On January 8, C.I.T. presented additional checks amounting to an excess of $20,000, which the bank refused to pay inasmuch as it had received directions from Harry Parsley not to pay any checks in excess of $300 and further because there was not enough credit in favor of Harry Parsley, Inc., to pay this amount. On the same date, C.I.T. refused to honor the thirteen drafts above mentioned.

Subsequent to this time, the bank surrendered to Harry Parsley, Inc. four of the thirteen drafts in exchange for a promissory note for $21,000 and a chattel mortgage and an assignment of accounts receivable.

In a judgment for the plaintiff, the trial court subtracted the amount of the four drafts released to Parsley from the total amount of the refused drafts and awarded judgment of $17,876.81 against the defendant corporation.

 It is fundamental that in absence of an acceptance or a promise to accept a holder of a bill has no right of action upon that bill against the drawee. Miller v. Northern Bank, 239 Wis. 12, 300 N.W. 758, 137 A.L.R. 870; State Bank of Chicago v. Mid-City Trust & Sav. Bank, 259 Ill. 599, 129 N.E. 498, 12 A.L.R. 989. The N.I.L., U.C.A.1953, 44–2–7 and 44–2–10, provides that an acceptance or a promise to accept must be in writing in order to bind the acceptor. The reason for the rule requiring acceptance in writing is that sound policy requires some substantial and tangible evidence of the contract, more reliable in its nature than the statements or recollection of witnesses. Selma Sav. Bank v. Webster County Bank, 182 Ky. 604, 206 S.W. 870, 2 A.L.R. 1136; Lawless v. Temple, 254 Mass. 395, 150 N.E. 176, 48 A.L.R. 758. However, the defendant, C.I.T., waived its defense that the agreement must be in writing and, in effect, admitted that it had accepted for payment all drafts representing retail transactions. All the outstanding retail drafts have been paid in accordance with that acceptance.

However, the value of the requirement that an acceptance be in writing is clearly illustrated by the present case. The bank, plaintiff, claims that the promise to accept was enlarged by a statement of a representative of C.I.T. given in reply to a question by Mr. Calder, Vice President and Cashier of the bank. Mr. Calder testified:

"Mr. Nichols had said that we had presented some $32,000.00 of wholesale financing which at that time consisted of drafts which were up for payment in their office. I informed him at that time that Parsley had a sizeable stock of used cars and that his stock appeared to be in pretty good condition, and that it appears as though he would be able to work off the excess stock in the period of some sixty days. At that time he said they didn't want to handle any more financing of used cars and for us not to accept any more drafts, [wholesale] apparently and I assured him that we would not. I said, 'By the way, how do we determine whether the draft is wholesale or retail financing?' and his reply was 'Wholesale financing drafts are for even amounts and generally in excess of $3,000.00.' And that terminated the conversation. I asked him how to determine whether a draft was wholesale or retail, and the reason I asked the question is the drafts didn't reveal on its face anything as to its character. My understanding was in even sums of $1000.00, or in round figures like $6000.00—$8,000.00 or $10,-000.00, whereas a retail sum had a figure in every digit, dollars and cents."

Mr. Nichols' version of the conversation was that he had told Mr. Calder that normally items of wholesale would be in larger amounts than retail, but the only way one could actually distinguish the items was to open the drafts and examine the contracts. The trial court found, despite Mr. Nichols' testimony, that he had made the statement in accordance with Mr. Calder's testimony and based its judgment for the bank upon an estoppel. The question before us, thus narrowed, is whether, as a matter of law, the elements of estoppel exist in this case.

As stated in J. T. Fargason Co. v. Furst, 8 Cir., 287 F. 306, 310:

"Equitable estoppel is bottomed upon the notion that, when one person makes representations to another which warrant the latter in acting in a given way, the one making such representations will not be permitted to change his position when such change would bring about inequitable consequences to the other person, who relied on the representations and acted thereon in good faith. * * * The representations made must be in themselves sufficient to warrant the action taken, and their sufficiency is a judicial question. It is not enough that the person who heard them deemed that he was warranted in acting as he did; the language used ought of itself to furnish the warrant.

One man might consider himself warranted in acting upon representations wholly insufficient to move a more careful and prudent person."

In that case, the court held that the payee of a draft was not warranted in relying upon a statement by the drawee that there would probably be sufficient credit to the drawer's account in eight or ten days to meet the draft, although he did, in fact, reply upon it to his detriment.

 In the present case, the person receiving the statement must be held to the reasonable conduct and belief of a man in his high position of trust with the bank, with his knowledge of all the surrounding circumstances. As an officer of a bank, with many years experience in the banking business he is presumed to know the law of negotiable instruments and more of the world of finance and the particular operation involved than to accept as true such a naive distinction between wholesale and retail transactions. He was aware that C.I.T. had financed all, or nearly all, of the automobiles on Parsley's floor and yet only two drafts during the entire time fell within the definition of wholesale financing which he relied upon. He was warned, not only by C.I.T. representatives, but also by the accounts at his bank of the shaky financial condition of the Parsley venture. His aid was solicited by C.I.T. in controlling the credit to be allowed to Parsley. He had many means of protecting the bank, and incidentally C.I.T., the most obvious of which

was to not allow credit to Parsley until each draft had been accepted. Clearly, under these circumstances, he was not warranted in relying upon the statement made.

The rule of the N.I.L. requiring that drafts be accepted in writing is salutary and almost mandatory for the orderly transaction of such business. The bank elected to engage in a course of dealing ignoring the N.I.L. rule. When circumstances arose which put it on notice that to continue on the same basis was hazardous to itself and to C.I.T., it continued at its peril; and notwithstanding the prior course of dealing, it seems that the rule of necessity is that the bank, having failed to obtain the acceptance in writing required by the N.I.L., cannot hold the C.I.T. responsible for refusing to honor the drafts.

 However, one of the allegations of the complaint in this action stated that at the time checks were presented to the bank for payment to C.I.T., that corporation knew or should have known that the only source from which said checks could be paid was the credits given to Parsley for the drafts which the corporation later refused to honor. No specific finding was made by the trial court on this matter; although the court did make the finding that the checks were paid in reliance on the assurances of C.I.T. personnel that the drafts would be paid and a general finding of issues not specifically mentioned in plaintiff's favor. If the payee of a check has knowledge that there are no funds on deposit to

meet it, and the bank pays the check in ignorance of that fact, there may be a recovery of the payment. Peterson v. Union National Bank, 52 Pa. 206, 91 Am.Dec. 146. Since the judgment was rendered on the basis of outstanding drafts, rather than the checks whose payment was wrongfully induced by appellants, this case must be reversed and remanded for further proceedings.

In order to finally dispose of this case, we further consider other points raised on appeal.

 Appellant claims that by taking the note and mortgage from Parsley and collecting some money on it and by asserting its claim in bankruptcy proceedings against Parsley, respondent has elected an inconsistent remedy and is precluded from asserting any claims whatsoever against appellant. The doctrine of election of remedies applies as a bar only where the two actions are inconsistent, generally based upon incompatible facts; the doctrine does not operate as an estoppel where the two or more remedies are given to redress the same wrong and are consistent. Where the remedies afforded are inconsistent, it is the election of one that bars the other; but where they are consistent, it is the satisfaction that operates as a bar. Washburn v. Peck, 245 Mich. 351, 222 N.W. 768; Frederickson v. Nye, 110 Ohio St. 459, 144 N.E. 299, 35 A.L.R. 1163; 18 Am.Jur., Election of Remedies, sec. 13. In the case of Rosacker v. Commercial State Bank, 191 Minn. 553, 254 N.W. 824, 94 A.L.R. 551, the court held that a proceeding against an attorney to compel him to pay over funds received by him by means of a forged indorsement was not inconsistent with a proceeding to hold the bank upon the forged indorsement. Similarly, in the present case, we see no inconsistency in the remedies afforded the bank and hence no election; although, of course, the bank cannot demand payment from Universal C.I.T. of the amount already satisfied by Parsley. U.C.A.1953, 15–4–3.

 A great deal of argument is devoted to the question of whether or not the bank intended to accept the $21,000 note as payment from Parsley, thus discharging appellant from the obligation. However, the trial court found that there was no agreement to that effect and the finding is supported by competent evidence. In the absence of such an agreement, the rule as set out in 40 Am.Jur., Payment, sec. 87, is:

"The general rule is that a note given by a debtor for a precedent debt will not be held to extinguish the debt, in the absence of an agreement to that effect, but will be considered as conditional payment or as collateral security, or as an acknowledgment or memorandum of the amount ascertained to be due. The doctrine proceeds on the obvious ground that nothing can be justly considered as payment in fact but that which is in truth such, unless something else is expressly agreed to be received in its place. That a mere promise to

pay cannot of itself be regarded as an effective payment is manifest."

■ Appellant claims that it was denied a right to trial by jury, but admits that it failed to make proper demand at the time the case was set for trial in accordance with the rules of the Fourth Judicial District where this case was heard. Its demand was made more than a month after the hearing for trial date and refused.

Article I, Section 10 of the Utah Constitution provides: "A jury in civil cases shall be waived unless demanded." The effect of this provision has been interpreted in Board of Education of Salt Lake City v. West, 55 Utah 357, 186 P. 114, and Thompson v. Anderson, 107 Utah 331, 153 P.2d 665, holding that a litigant not making demand for a jury trial as required by Court rule has no right to a jury trial and that the matter becomes one of the discretion of the court. Where, as here, no valid excuse for the failure to make the demand timely was offered, there is no abuse of discretion on the part of the trial court in denying a later demand.

Reversed and remanded for further determination not inconsistent with this opinion and, if deemed necessary, for the taking of additional evidence. Each party to bear its own costs.

CROCKETT, HENRIOD and WADE, JJ., concur.

WORTHEN, J., not participating.