464 P.2d 598

.A. Norman GROVER et al., Plaintiffs
and Appellants,

v.

Oleen GARN et al., Defendants and
Respondents.

.ARTHUR N. GROVER FARMS, INC., a cor-
poration, Plaintiff and Appellant,

v.

Oleen GARN et al., Defendants and
Respondents.

No. 11472.

Supreme Court of Utah.

Jan. 29, 1970.

Clifford L. Ashton of VanCott, Bagley,. Cornwall & McCarthy, Salt Lake City, for appellants.

Walter G. Mann and Reed W. Hadfield,. Brigham City, for respondents.

FAUX, District Judge.

This case involves the sale and purchase of the Arthur N. Grover dry farm in Oneida County, Idaho. The purchasers were Oleen Garn and wife, their two sons and their wives. The land, approximately 1,300 acres, had been raised, over many years, by Mr. and Mrs. Grover and family from sagebrush status to a very productive dry farming operation.

On March 3, 1963, the farm was transferred by Mr. and Mrs. Grover from their personal ownership to and made the assets of the newly formed Utah corporation, Arthur N. Grover Farms, Inc. Mrs. Grover (Estella V.) became vice president, holding 45 shares of stock; their daughter, Fay G. Wight, became president, with one share of stock; and Arthur N., the father, became secretary-treasurer, with 45 shares of stock.

A contract (Exhibit 3) dated the 1st day of October, 1964, appears to cover the sale and purchase alluded to above. The seller is shown to be:

Arthur N. Grover Farms, Inc.

By: Estella V. Grover
Vice-President

Attest: Arthur N. Grover
Secretary

The Garns signed as the buyers. In the contract the buyers agree to pay to the seller for the land, some water stock and some Taylor Grazing permits the sum of $186,535 in annual installments of one-half the income of the farm with a minimum of $10,000, the balance to draw interest at the rate of 3% per annum. These payments were to be made to Mr. and Mrs. Grover for their personal use. Seller and buyers received their copies of the contract and deeds were delivered by the Grovers, with a signed escrow agreement to the First Security Bank of Utah, Brigham City.

On December 31, 1965, a Norman Grover, a son, representing himself as a stockholder in the Grover Corporation, started a class action in the District Court in and for Box Elder County, Utah. The defendants were the Garn family and the Grover Corporation. The action sought to have the contract nullified and to have the farm restored to the Grover Corporation.

On February 21, 1966, Arthur N. Grover Farms, Inc., started an action in the same court, civil case No. 10081. The Garns were made defendants and were charged with breach of the contract of October 1, 1964. Termination of the contract and money damages were sought because of the breach. Many pleadings and cross and counter pleadings were thereafter filed in both cases and many hearings were held. Prior to the 20th day of September, 1967, either by order or by stipulation, the two cases were consolidated for trial. The result was to align the Grovers against the Garns and vice versa. The case proceeded to trial which began on May 6, 1968, and continued with recesses and trial days until July 17 of that year. The court issued memorandum decisions on October 2, 1968, and on December 18, 1968, formal findings, conclusions and judgment were made and entered which resulted generally in favor of the Garns and against the Grovers.

Of particular importance are the conclusions of law that:

* * * the said Arthur N. Grover, Inc. is but the instrumentality through which the said Arthur N. Grover and Estella V. Grover, for convenience transacted their business * * * that the corporate veil be pierced * * * that the said Arthur N. Grover Farms, Inc., Arthur N. Grover, individually, and Estella V. Grover, individually, are bound as a corporation and as individuals by their contract entered into on the 1st day of October, 1964, and [they] are estopped from declaring said contract * * * to be of no force and effect * * * that defendants are entitled to a judgment for attorney fees against Arthur N. Grover and Estella V. Grover, individually, and Arthur N. Grover Farms, Inc. * * * that reasonable attorney fees are $5,-000.00.

The judgment and decree incorporated the foregoing terms.

The Grovers appealed that judgment to this court relying upon four points:

I. The Contract of sale is invalid because it was not authorized by the Board of Directors.

II. There is no basis for any estoppel of the corporation to deny the validity of the contract.

III. The Grovers are not parties to the contract of sale, did not execute it as individuals and are not personally liable under it.

IV. The Court erred in finding that the contract of sale was prepared by the Grovers and their attorney.

These points outline the purpose and object of the Grovers in the trial court as seeking confirmation of their efforts to rescind the contract with the Garns of October 1, 1964. The format and substance are the same as the case comes into this court: We are asked by the Grovers to cancel out or rescind the said contract and restore the parties to their status quo. Thus we are required to proceed through our analysis and resolution under the rules of equity for it has been said:

Rescission is an equitable remedy designed to afford relief from contracts entered into through mistake, fraud, or duress. * * * the nature of relief asked in such cases must be such as to place the parties in their original situation. * * *[1]

■ Other aspects of this remedy are emphasized as follows:

The power of equity courts to order cancellation of instruments is considered exceptional in character. The purpose of its exercise is not to interfere with the freedom of contract or with proper legal liability even for bad bargains; but only to supplement the powers of courts of

1. Cleaves v. Thompson, 122 Kan. 43, 251 P. 429 (1926).

law where there is exceptional equity of a settled and recognized kind. In order to invoke the jurisdiction of equity to cancel or rescind a contract, some special ground must be shown to take the case out of the general rule that remedy for breach of contract must be sought at law.[2]

So proceeding, we recognize too that we should consider both the facts and the law as revealed in the record in this case.

■ Under this point appellants solicit with urgency that we overturn the ruling of the trial court because there was no formal following by Arthur N. Grover and his wife Estella of the corporation statutes of this state, Sec. 16–10–74, U.C.A.1953. The record as to the facts amply supports this contention. In this regard, however, the record also shows that Mr. and Mrs. Grover, out of the 100 shares issued, each held 45 shares of stock of the corporation. It shows also that Mrs. Wight, the daughter who was made president, was given one share of stock and immediately signed all the other certificates in blank as president, turned the stock book over to her father and then departed for her home in California. The trial court so held respecting stock ownership on the day of the contract for the sale of the land. There was contradictory evidence in that regard demonstrating that each of the Grover children held 5 shares from their mother, but we do not regard the opposing evidence to be of sufficient strength or quality to justify us in reversing the ruling of the trial court in that particular.

■ So we have the owners of substantially all of the stock of the corporation, who were also the owners of the land before it came into the corporation as its primary asset, acting without the formality of a stockholders meeting or a written resolution in selling the primary asset of the corporation. More, they agreed in the name of the corporation, as a part of the sale, that all payments should go from the buyers to Mr. and Mrs. Grover individually and to turn over to the Garns property of Mr. Grover consisting of shares of water stock and rights for grazing cattle under the U. S. Taylor Grazing Act. While this latter facet of the whole contract may be termed a maverick and concededly not a model for all corporate dealings yet as tendered in defense by the Garn defendants and respondents we are not concerned here with a corporation having a multitude of stockholders situated over a wide expanse of the country. The two owners signed as vice president and secretary-treasurer of the seller corporation on October 1, 1964. While we do not approve the method employed here and certainly denounce it as a pattern to be followed by

2. 13 Am.Jur.2d, Sec. 7, Cancellation of Instruments.

corporations generally, we cannot disagree in this instance with the statement of law:

> * * * but the trend of authority is to uphold as binding on the corporation acts or contracts on its behalf by a person or persons owning all or practically all the stock.[3]

Relative to the complaint that the corporation could not agree to sell property which it did not own we do not react violently in support of that contention even as a principle of law. Inasmuch as equity regards done that which should be done we are not affronted by the effort of the owners of the corporation as a minor part of the overall transaction to have their corporation deliver to the Garns some water stock and grazing permits owned by them individually.

The contention of the appellants that Arthur N. Grover was incompetent to effectively transact any business either for himself or the corporation because of his age and infirmities is not sufficiently supported by the evidence, although on that point it is copious on both sides, to require us to reverse the ruling of Judge Lewis Jones. Persuasive the other way is that Mr. Grover had the assistance of his lawyer, Mr. E. J. Skeen, to prepare the contract document which the parties signed to close the deal. As well, one of the answers to interrogatories in this case (Rec. 963) recites the following:

> At the stockholders meeting held at 1971 Yalecrest Avenue, Salt Lake City, Utah, in October 1965, the attempted sale of Arthur N. Grover Farms, Inc. was discussed. * * * After some further discussion, a resolution was unanimously passed directing A. N. Grover to represent the stockholders in all matters pertaining to said contract of sale.

Besides the parents there were six of the eight Grover children present at that meeting. While some evidence indicates that Mr. Grover's mental condition deteriorated prior to and after October 1, 1964, yet at the meeting a year after that date these same children who attack the contract signed by their parents a year earlier appointed their father to represent them "in all matters pertaining to said contract of sale." Nothing in the record challenges Mr. Grover's account of what took place at that stockholders meeting. We think none of them would have appointed him to act as their representative if they had believed that a year earlier he was incompetent to transact business. The evidence relating to Mrs. Grover's blindness and general illness is more convincing as to lack of capacity but no great argument is advanced as to her.

3. 19 C.J.S. Corporations § 1004, p. 471.

■■ Relative to the second point that the evidence provides no basis for the ruling that the corporation is estopped to deny the validity of the contract, we have this to say, that under the doctrine or principle of estoppel in pais one may by his acts or conduct away from the court prevent himself from denying in court the effect or result of those acts. We respect a definition of long standing taken from Black's Law Dictionary:

> An estoppel by the conduct or admissions of a party * * * it is, and always was, a familiar principle in the law of contracts. It lies at the foundation of morals and is a cardinal point in the exposition of promises, that one shall be bound by the state of facts which he has induced another to act upon.

The trial court ruled that Mr. and Mrs. Grover by their acts and statements led the Garns to believe that they had authority to sell the farm. We fail to find evidence in the record that compels us to reverse that ruling.

■■ The third point asserts that the Grovers are not parties to the contract, did not execute it as individuals and are not personally liable under it. This point relates, it seems, to the part of the judgment which makes the Grovers personally responsible for payment of an attorney fee of $5,000. We have already concurred with the trial court in its ruling regarding the . water stock and the grazing permits in holding that because the Grovers were willing to obligate their corporation to deliver property of theirs individually which was within their personal ability to deliver, that they should do so. Respondents may rebel against our unwillingness to go along with the trial court and make Mr. and Mrs. Grover liable for the $5,000 attorney fee, and may contend that the two situations are much alike. We think there is a difference, in part, because Mr. Grover consented that his water stock and grazing permits go with the deal and become the property of the buyers. Neither he nor Mrs. Grover consented to be personally liable for the attorney fee. We do not know of any axiom in equity that would make them obligated to pay such fee; in part, because we think the trial court imposed that obligation upon the Grover parents personally as some kind of penalty because they made their corporation their alter ego. By reason of it the trial judge said he would "pierce the corporate veil," and rule that "Arthur N. and Estella V. Grover, individually, are bound by the contract entered into October 1, 1964 (Rec. 888)."

This cannot be so. While "pierce the corporate veil" is a dramatic expression, it is actually no legal sin if a person should use a corporate entity for convenience in the conducting of his business. Many do just that without creating any cause for complaint from the law. Some incor-

porators so perfectly fashion the structure and performance of a corporate entity to that of their individual personality that it is honestly said that the corporate entity is the alter ego of the natural person who designed it.

■ There are times when allegations and evidence cause courts to pierce the corporate veil to observe conduct of persons who control and manipulate the corporate business. At times nothing is observed in the acts and conduct of those individuals that would justify canceling of the corporate contracts or justify making the individual operators responsible and personally liable under the individual contracts. Consider a quote from an enlightening California case on that subject:

The trial court has looked through the form of the corporate entity. It found the intent and purpose of the defendants to be free from the fraud charged by the appellants. Before the acts and obligations of a corporation may be recognized as those of a particular person under the alter ego doctrine, it must be shown that an adherence to the corporate entity under the particular circumstances would sanction a fraud or promote injustice.[4]

There is no charge of fraud on the part of Mr. and Mrs. Grover in the negotiations for and the signing of the contract. What is there then to justify the ruling? Had there been misconduct on their part to justify complaint, the Garns might be appropriately asking that the contract be nullified. The Garns are insisting, however, that their purchase of the A. N. Grover farm be confirmed. We must reject that part of the judgment which holds the Grovers personally liable.

■ Under their point four the appellants claim that the trial court committed error when it found that the contract was prepared by the Grovers and their attorney. A. N. Grover had been a customer of the First Security Bank of Utah at Brigham City and had consulted with Mr. Nelson, the president of the Bank, before the contract in question was prepared. The evidence indicates that a preliminary draft was typed on Mr. Nelson's typewriter. Mr. Nelson denied that he prepared it. It is admitted that Mr. Grover had the assistance of Mr. E. J. Skeen, his lawyer, and of his secretary, Mrs. Bishop, and that the final copies of the contract which were signed by the parties were prepared in Mr. Skeen's Salt Lake office. We consider the evidence of insufficient weight to require us to interfere with the trial court's ruling.

In view of the foregoing, except for the ruling which makes Mr. and Mrs A. N.

4. Wiseman et al. v. Sierra Highland Mng. Co. et al., 17 Cal.2d 690, 111 P.2d 646.

Grover personally liable, the judgment of the district court which requires the corporation to perform its contract is sustained. The judgment is amended to eliminate the personal liability imposed upon said Mr. and Mrs. A. N. Grover, except as to their water stock and Taylor Grazing Permits, and the case is remanded to the district court so that its record will be made to conform to the judgment as so amended.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

ELLETT, J., concurs in the result.

HENRIOD, J., does not participate herein.