John H. MORGAN, Sr., et al.,
Plaintiffs and Appellants,

v.

BOARD OF STATE LANDS of the State of
Utah et al., Defendants and
Respondents.

No. 14115.

Supreme Court of Utah.
May 5, 1976.

Frank J. Allen, Clyde & Pratt, Salt Lake City, for plaintiffs and appellants.

Vernon B. Romney, Atty. Gen., Paul E. Reimann, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

Plaintiffs, original lessees under several oil shale leases from the defendant Board of State Lands, and their assignee, Husky Oil Co., brought this action to have it determined that their ten-year leases on certain State lands had been extended for an additional ten years. From the granting of defendants' motion for summary judgment plaintiffs appeal, contending (1) that the defendant Land Board should be deemed to have agreed by implied contract to extend the leases, or, alternatively, (2) that it should be estopped from denying that the leases had been extended.

In 1963 the Land Board issued to the plaintiffs (predecessors) leases covering 625 acres of State-owned land containing oil shale deposits in Uintah County for a term of ten years, to expire on December 31, 1973. These were assigned to the plaintiff Husky Oil Co. in 1964, but the Morgans remained lessees of record. On September 29, 1965, the Board caused notices to be sent out to all oil shale lessees that they could convert their ten-year leases into 20-year leases by following the procedure explained in the letter. This required submission of an application, together with a $2 filing fee and a fee of 6 cents per acre. Under the new lease, the rent would be 50 cents per acre per year, the same as under the old leases, for the first ten years, and $1.50 per acre per year for the last ten years. Plaintiffs do not deny that they received this letter, nor that they failed to take any action concerning it for over eight years.

On December 15, 1973, the Board caused statements to be sent from its office to all lessees for the rent to become due for the following year, 1974. By mistake the plaintiffs were included among those to whom such a notice was sent, not taking account of the fact that their leases would by their terms expire on December 31, 1973. Without taking any of the procedures required by the letter as stated above, the plaintiffs, on December 29, 1973, sent in a check for the amount that would have been due for the 1974 rent. In March 1974 the Board's office discovered the error, and returned the payment to the plaintiffs, explaining the error and that because the leases had expired on December 31, 1973, the rent was not payable nor acceptable.

■ In arguing that the court should find that there was an implied contract to extend the leases, plaintiffs postulate that the sending out of the erroneous notice of rent due in December 1973 constituted an offer to extend the leases which the plaintiffs accepted by tendering payment. This proposition is untenable for two reasons. First, it is elementary that in order to find any contract, including an implied contract, it is essential that it appear there was an express or implied meeting of the minds of the parties on the agreement.[1]

■ In this situation the interest of the State (and the public) was represented by the Land Board. In performing its responsibility as imposed by law its action is comparable to that of the board of directors of a corporation; and any action of such consequence as the leasing of lands must be authorized by action of the board. It is undisputed here that the Board did not act upon any application or request of the plaintiff to extend their leases for an-

---

1. The principle is aptly stated by the Supreme Court of Washington in *Richards v. Kuppinger*, 46 Wash.2d 62, 278 P.2d 395 (1955): "Both express and implied contracts grow out of the intention of the contracting parties and in each case there must be a meeting of the minds before there can be a contract." See also, 77 A.L.R. 1141, Annot. —Silence As Acceptance of Offer; and text statements in 17 C.J.S. Contracts § 31 and § 17 Am.Jur.2d Contracts Sections 3, 18.

other ten years. There was thus the absence of any official action thereon. From this fact, considered in conjunction with the other circumstances shown, including that it is undisputed that the notice of rent to become due was sent out by mistake, it is clear that there never was any intent to enter into any such contract with the plaintiffs. Second, our law requires that leases and contracts entered into by the Board be in writing and approved by the Attorney General.[2] It is obvious that these statutory requirements were not complied with and that therefore there could be no contract binding upon the Board, or upon the State, whom it represents.

In their argument that the Board should be estopped to deny that it had extended the leases the plaintiffs aver: that they were justified in relying on the notice of rent for the next year, 1974, and in tendering payment of the rent in response thereto; that they were thus deluded into acting to their detriment; and that therefore the Board cannot properly change its position and deny the existence of the lease. They combine with this the assertion that the Board never published its regulations as to the procedure as stated in the September 1965 letter for converting the leases to 20-year terms, whereas the Board is required by law to publish such regulations.

 Estoppel is a doctrine of equity purposed to rescue from loss a party who has, without fault, been deluded into a course of action by the wrong or neglect of another. The measure we apply to plaintiffs' claim of estoppel is an adaptation to this case of the standard heretofore approved by this court: Estoppel arises when a party (defendant Board) by his acts, representations, or admissions, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another (plaintiffs) to believe certain facts to exist and that such other (plaintiffs) acting with reasonable prudence and diligence, relies and acts thereon so that he will suffer an injustice if the former (Land Board) is permitted to deny the existence of such facts.[3]

 That doctrine provides no relief to plaintiff under the facts here. The fact that the Board did not publish its regulations as to the procedure for extending the leases does not redound to their advantage. They had the actual notice of what was required to be done in the September 1965 letter referred to; and under such circumstances, the failure to also publish the regulations had no effect upon what the plaintiffs did or should have done. Moreover, it plainly appears that the plaintiffs exercised neither prudence nor diligence about obtaining an extension of their leases.[4] If they had had any intention to do so and had been planning to follow the required procedure, and the defendant Board had done something to delude or dissuade them from doing so, there may have been an equitable estoppel. But nothing of that character is represented to be the fact here.

All the Board did was to send out an erroneous notice of rent due; and the plaintiffs, in full awareness of what must be done to extend the leases, neither took any such action, nor were they dissuaded from doing so. They continue in their failure to do anything about extending their leases; and attempted to take advantage of what they knew or should have known was simply a mistake in sending them notice of rent which would have been due the following year under a properly extended lease.

2. Section 65-1-76, U.C.A.1953.

3. See *Kelly v. Richards et al.*, 95 Utah 560, 83 P.2d 731 (1938), citing 21 Corpus Juris p. 1113, et seq.; also see *Farmers & Merchants Bank v. Universal C. I. T. Corp.*, 4 Utah 2d 155, 289 P.2d 1045 (1955) and 31 C.J.S. Estoppel § 67.

4. The doctrine of equitable estoppel does not operate in favor of one who has knowledge of the essential facts or who has convenient and available means of obtaining such knowledge. *Wichita Federal Savings & Loan Ass'n v. Jones*, 155 Kan. 821, 130 P.2d 556 (1942).

In summary, the controlling and important fact is that the plaintiffs, with knowledge of what was required in the filing of an application to extend their leases for another ten years and pay the requisite fees therefor, failed to take any such action for over eight years; and when they received a notice which they knew, or should have known, was sent by mistake, without making any inquiry or taking any other action with respect thereto, attempted to take advantage of the mistake and claim on extension of their leases. We are not persuaded that the trial court was in error in rejecting their contentions and dismissing their complaint.

Affirmed. No costs awarded.

ELLETT, J., concurs.

HENRIOD, Chief Justice (concurring with following observations):

I somewhat reluctantly concur in the result, since the plaintiffs and their predecessors, with due diligence, apparently complied with the lease, subject of this legislation, for ten years,—but I cannot overlook the record that really does not reflect either an express or implied contract.

Furthermore, the urgence of the plaintiffs that the State is estopped is not supported by the record, in my opinion, because there is no significant evidence that there was any false representation or concealment of material facts attributable to the State that were not easily determinable and that should have been in the knowledge of plaintiffs, experienced oil land developers, accompanied by any intent on the part of the State that plaintiffs would act upon, and that the latter acted on and was induced to do so to their detriment.[1]

An estoppel in pais, like, for example, the case of a criminal offense, generally requires some kind of motive, which appears to be significant by its absence here.

In addition, it seems that the plaintiffs weaken their prayer for invoking the office of equity, with a confrontation by a similarly strong counterequitable defense of laches for eight years before asserting any rights of renewal of the lease. If excused in equity under such circumstances, a highly contentious problem might be apt to prevail where similar interests well might complain, about the use of equity as a crutch to justify an advantage to support an appreciation in oil land values that some erstwhile ready, able and willing prospective bidders have been denied, in a highly competitive, sensitive and mushrooming energy demand, and to which they would claim a vigorous right to denounce and prevent.

The bona fides of the parties are unquestioned, but perhaps because of unintended neglect, misunderstanding or indisposition to act of some sort, the cement has not been poured upon which to build a contractual edifice, free from legal objection.

MAUGHAN, Justice (dissenting):

On appeal is a summary judgment of the trial court holding that certain leases, in which plaintiffs were lessees, expired by their own terms on December 31, 1973; for the reason that plaintiffs had failed to comply with terms and conditions, allowing renewal, set forth in a letter of September 1965. We should reverse, and hold that since the actions of the landlord produced such inequitable consequences plaintiffs should have an opportunity, to correct the procedural deficiencies, and complete the conversion of their leases to embrace the new terms.

In 1963 plaintiffs, except Husky Oil Company, became lessees under certain oil shale leases on State lands. The leases had a ten-year term, with an expiration date of December 31, 1973. In 1965, the State Land Board authorized revision of the form of the oil shale lease, together with an application from to amend the lease. Under the revised forms, then

1. Black's Law Dictionary, Third Edition,— Estoppel—P. 688.

present lessees, for a fee of 6 cents per acre could convert old leases to new provisions. The new lease had a term of 20 years, and prescribed a rental of 50 cents per acre for the first ten years; $1 per acre for the remainder of the term.

Plaintiffs admit having received a letter, from the State Land Board, dated September 29, 1965. The letter informed them of the amended lease form, and carried with it a copy of the new form; together with a statement that applications to amend would be granted upon receipt of a fully executed application and lease form, together with a tender of 6 cents per acre and a $2 filing fee.

Prior to the receipt of this letter, plaintiff Morgan had assigned the leases to Husky Oil, although he remained record owner; and he had sent the letter together with the enclosed materials to Husky Oil. Plaintiffs concede they did not execute the applications or leases, or remit the fees, prior to the expiration date of the original lease. However in mid-December 1973, plaintiffs received a notice of rentals for 1974, from the Board of State Lands. Included therein was a notice for the rentals of all but two of the leases, and it called for the increased rent viz., from 50 cents to $1 per acre. Defendants claim the notice was sent through clerical error and was not authorized.

In response to this rental notice, plaintiffs remitted the rentals on December 31, 1973. Plaintiffs' check stood in the amount of $24,258.50, which covered the leases in issue, and others not involved in this action. In February of 1974, plaintiffs tendered a check for $829.78 to pay the 6 cents per acre conversion fee. In mid-March of that year, plaintiffs received a refund check on the rentals in the sum of $13,834. They were informed that since they did not exercise their option to convert the leases or pay the conversion fee prior to the expiration date, the leases had expired and would be offered for bid.

Plaintiffs advance two theories on appeal, both of which were rejected by the trial court. The first theory argues that a contract implied in fact extends the leases; the second theory, that the Board is estopped to deny the extension of the leases.

*Kimball Elevator Company, Inc. v. Elevator Supplies Company, Inc.* [1] is cited for its statement that a promise may be inferred wholly or in part from such conduct as justifies the promisee in understanding that the promisor intended to make it. Although the facts are undisputed, it is claimed there are two reasonable inferences to be drawn from them, and they should have been submitted to a fact finder rather than disposed of by summary judgment. According to plaintiffs, the Board indicated understanding that the leases had been extended by its amending its accounting records; notifying them the rentals under the new rate were due; and thereafter accepting payment and retaining it until mid-March. Also, plaintiffs claim they understood the new form lease was in effect by paying the increased rental required under the new form prior to the expiration date of the old lease.

This theory unavailing for the reason the evidence is undisputed that the Board had no intention, or understanding, the leases could be amended in this manner. There is no evidence the Board did promise, or convey to the plaintiffs, by its conduct, that it would accept the leases. An express contract is one expressed in words, while an implied contract is one where the mutual intent is manifested by particular acts and attendant circumstances. There must be mutual intent.[2]

Urging the theory of estoppel, it is the contention of plaintiffs the Board under the admitted facts, could reasonably be found to be estopped to deny the extension of the leases. It is plaintiffs' view the Board induced them to pay the rentals and refrain from any inquiry which would have resulted in their following the proce-

1. 2 Utah 2d 289, 272 P.2d 583 (1954).

2. *Gleason v. Salt Lake City et al.*, 94 Utah 1, 74 P.2d 1225 (1937).

dure required for an extension. A further significant circumstance was the failure of the Board to publish in its rules and regulations the requirements for converting an existing oil shale lease, as required by law.[3] Without a regulation specifying the procedure for conversion of the oil leases, one could reasonably rely on the transmittal of the notice of the increased rental as consistent with the conversion of the lease.

Here the State acts to dispose of public lands, by lease. It thus acts in its proprietary capacity and equitable estoppel is a proper remedy.[4] Although a governmental agency cannot be estopped by its ultra vires acts, the distinction between an irregular exercise of a granted power and the total absence, or want of power, must be observed. The agency may be estopped where the act relied on to create the estoppel was within powers, although the method of exercising the power was irregular, or unauthorized.[5]

Defendant relies on the statute of frauds, Section 25–5–1 and 25–5–4(1), U.C.A.1953, as well as Section 65–1–18 and 65–1–23, which impliedly require all leases of the Board to be in writing. However, the nature of the doctrine of equitable estoppel is to preclude a party, both in law and equity, from asserting rights which might have otherwise existed against another person; who relied upon the conduct of his adversary, in good faith, and changed his position to his detriment. An estoppel arises where a party by his acts, representations, or admissions, or by his silence when he should speak, intentionally, or through culpable negligence, induces another to believe certain facts exist; and such other properly relies and acts thereon, so that he will be prejudiced if the former

is permitted to deny the existence of such facts.[6]

The Doctrine of Equitable Estoppel must be applied against the State, when necessary to prevent manifest injustice, and the exercise of its governmental powers will not thereby be impaired. In addition to these, before a party can be estopped, the proponent must clearly show:

(1) an admission, statement, or act, inconsistent with a claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or acts; and (3) injury to such other party arising from permitting the first party to contradict or repudiate such admission, statement or act.[7]

These principles are supported by *Kelly v. Richards*,[8] but the factual situation is not nearly so closely allied to the instant matter as is the Metropolitan case cited in footnote seven.

Plaintiffs conceded they received notice of the offer to amend their leases and through inadvertence failed to act on the matter for a period of eight years. However, the failure of the Board to publish the rules and regulations concerning conversion of the oil shale leases combined with the notice of rentals due for 1974 precluded plaintiffs from conducting a prudent inquiry, which would have revealed the requisite procedure. The cardinal point of an estoppel by the conduct of a party is that one shall be bound by the state of facts upon which he has induced another to act.[9] Whether the conduct was sufficient to warrant the action taken is a judicial question, and not one for the trier of the fact.[10]

TUCKETT, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.

3. 65–1–96, U.C.A.1953, as amended.

4. *Strand v. State*, 16 Wash.2d 107, 132 P.2d 1011 (1943).

5. *State Ex rel. Shell Oil Co. Inc. v. Registrar of State Land Office*, 193 La. 883, 192 So. 519 (1939); *City of Corpus Christi v. Gregg*, 155 Tex. 537, 289 S.W.2d 746 (1956).

6. Ibid, *Strand v. State*.

7. *Metropolitan Park District of Tacoma v. State Department of Natural Resources*, 85 Wash.2d 821, 539 P.2d 854, 859 (1975).

8. 95 Utah 560, 83 P.2d 731 (1938).

9. *Grover v. Garn*, 23 Utah 2d 441, 464 P.2d 598 (1970).

10. *Farmers & Merchants Bank v. Universal C. I. T. Credit Corp.*, 4 Utah 2d 155, 289 P.2d 1045 (1955).