# SMITH et al. v. NELSON.

No. 7133.   Decided August 28, 1948.   (197 P. 2d 132.)

See 11 C. J. S. Boundaries, sec. 77. Establishment of boundary line by oral agreement or acquiescence, see note, 113 A. L. R. 421. See, also, 8 Am. Jur. 802.

*Joseph E. Evans,* of Ogden, for appellant.

*Thatcher & Young,* of Ogden, for respondent.

McDONOUGH, Chief Justice.

Defendant appealed, and plaintiffs cross-appealed from a judgment and decree quieting title. The subject matter of the title dispute is a strip of land 2 feet in width. The trial court compromised the conflicting claims by awarding about ⅔ to the plaintiff and about ⅓ to defendant.

A diagram accompanies this decision to illustrate some matters of pleading and evidence.

Plaintiff sued to quiet title to a portion of Lot 5, Block 12, Plat "B", Ogden City Survey. Said tract is described as beginning at a point 40 feet east of the southwest corner of said lot and running east 49 feet; thence north 80 feet, etc. Plaintiff has good record title to the west 47 feet of said described parcel (indicated on the diagram as Tract C), and a tax title to the east 2 feet. The east 2 feet constitute the tract of land here in dispute. By answer, defendant asserts title to a tract of land described as beginning *on a fence line* at a point *approximately* 89 feet east of the southwest corner of said Lot 5, and running east to the southeast corner of said lot; thence north, etc. The court found that defendant has record title to land described as beginning 89 feet east of the southwest corner of said lot and running east to the east line of said lot. The west line of the land to which defendant has record title is the east line of the 2 foot strip to which plaintiffs have a tax title.

Plaintiffs as well as defendant deraign their record titles through Aaron Jackson. In 1913 said Jackson and wife conveyed to defendant Nelson a tract of land described as beginning at the *southeast* corner of said Lot 5, and running west 40 feet, thence north, etc. Said tract is indicated on the diagram as Tract A. Defendant testified that measurement was made by the two of them with a tape. In 1919 defendant bought an additional 3 feet of land on the west of said 40 foot tract. Defendant testified that upon measuring the 3 feet to the west of what they thought was the west line of said 40 foot tract, Jackson said, "That is the place to put your fence." Defendant also testified that in 1919 after said tract of 3 feet was measured off he started to build a portion of a fence. He had no survey, and he started at the north end of his property and extended it southward to a point about 70 feet north of the sidewalk which constitutes the south line of the lot. The record fails to disclose just when in 1919 defendant began building that fence. The deed to defendant dated November 24, 1919, describes a tract which begins 92 feet east of the southwest corner

of said Lot 5, and runs west 3 feet (or to a point 89 feet east of the southwest corner of said lot). Said last conveyance to defendant is designated on the diagram as Tract B. The fence, however, was not built on a line which is 89 feet east of the east line of said Lot 5, but 2 feet farther to the west.

There has been some argument with respect to a surplus of 2.32 feet in the east to west measurements of said lot. Inasmuch as Tract B is described with reference to the southwest corner of the lot as well as Tract C and the tract in dispute, the 2 feet in dispute cannot be regarded as surplus. Any surplus therefore is not actually involved in this controversy.

In 1925 Jackson conveyed Tract C to L. Dow Browning, predecessors in title to plaintiffs. The east line of said tract is the west line of the 2 foot tract here in dispute. Browning built a low cement coping out to the public sidewalk from his porch. In 1926 defendant extended his fence southward to said coping. At that time said fence and coping constituted the east boundary line of Browning's land.

Plaintiffs claim title to said 2 foot strip of land by county tax deed to their predecessors in title, and by conveyance to them. This property was assessed for taxes in the name of Aaron Jackson, and the land went to tax deed in 1945. That same year the county sold it to plaintiffs' predecessors in title. Neither plaintiffs nor defendant claim to have received any deed from Jackson specifically describing this property.

Defendant claims title to the 2 foot strip of ground on the theory that he erected a fence on the west line thereof in 1919 to settle a boundary dispute with his father-in-law, Aaron Jackson, and that he extended it southward in 1926 after settling a boundary dispute with Browning. Defendant also claims that said fence and the cement coping established said boundary line by a long period of acquiescence.

The evidence does not support the contention of defendant that the segment of fence erected by him in 1919 was put up to settle a boundary dispute between himself and Jackson. Defendant testified that he bought an additional 3 feet of ground in 1919 from Jackson, and obtained the deed dated November 24, 1919. The record is not entirely clear whether defendant claims that the purchase of the extra 3 feet was made some time in 1919 before the deed was prepared or whether the fence was partially erected before the deed was delivered. The evidence is not sufficient to show that there was a boundary dispute at that time. The attempt to measure off 3 feet to the west of the tract defendant had previously purchased, together with Jackson's statement that the point to which they had measured was where defendant should erect his fence, is consistent with an intention to have the fence erected on the true boundary line. Defendant testified that he purchased the extra 3 feet, which is inconsistent with any theory that there was uncertainty or a dispute as to where the boundary line should be located, for defendant's testimony shows that he intended to erect the fence on the west line of the 3 foot strip he was then purchasing.

If the deed dated November 24, 1919, was delivered after the land was marked off, and the parties erroneously assumed that the deed covered all of the land east of the fence not theretofore conveyed to defendant, the specific rule contended for by appellant would still have no application. If the purchase agreement was to convey to defendant all the land east of the fence line, there being no reference in the deed to any fence, defendant would have a cause of action for reformation of his deed on the ground of mutual mistake. This action is not one for reformation of a deed. If it were, Aaron Jackson and wife, or their personal representatives, would be necessary parties to such action.

From 1919 to 1925 the only person with whom defendant could have had any boundary dispute would have been Aaron Jackson; for the rule sought to be invoked by defendant

applies only to adjoining landowners. See *Tripp* v. *Bagley*, 74 Utah 57, 276 P. 912, 69 A. L. R. 1417; *Briem* v. *Smith*, 100 Utah 213, 112 P. 2d 145; and *Home Owner's Loan Corporation* v. *Dudley et al.*, 105 Utah 208, 141 P. 2d 160. Since Browning and defendant were not adjoining land owners, Browning could not have constructed the cement coping on his east line to settle any boundary dispute. Browning claimed title only to the fence. In fact, he and defendant were never adjoining landowners, for Aaron Jackson continued to be the record owner of the 2 foot strip of ground adjoining the land conveyed to Browning. Said strip separated the lands of defendant and Browning.

The contention that said fence and coping established a boundary by a long period of acquiescence, is also unsupported by the record. Until acquisition of the tax title in 1945, plaintiffs and their predecessors in title to Tract C claimed title only to the fence line. The only person who could have acquiesced in the location of a fence at a place other than on the true boundary was the one on whose land the fence might have encroached. Only Aaron Jackson was encroached upon by the building of a fence. The only period of acquiscence which could be claimed would have been from 1919 to 1925, or a period of 6 years which would be insufficient to establish a title by adverse possession. Since defendant testified that the land was vacant west of Tract B until 1925 when Jackson sold to Browning the land designated as Tract C, Jackson did not physically occupy any part of the land which he owned. After 1925, the fence took in all the land which Jackson had not previously conveyed. The circumstances do not permit a finding that the fence in question was established as a boundary between adjoining lands, by a long period of acquiescence.

While defendant pleaded title by adverse possession, he failed to prove payment of taxes for the requisite period of seven years or that taxes were not assessed during the

years when he did not pay them. Proof that he planted vegetation and cultivated to the fence, and that he occupied the land under claim of right, could not operate to divest Jackson of record title when no taxes were paid. Furthermore, even if title had been acquired by adverse possession by defendant, not having established such title of record by decree quieting title, the county was entitled to assess said 2 foot strip of land to Aaron Jackson as owner of record. The land went to tax deed in 1945, and the county quitclaimed to plaintiff's predecessors in interest.

Plaintiffs made out a prima facie case by introduction in evidence of a tax title to the 2 foot strip, which was the only land in dispute. Defendant started to assail the tax title, but abandoned his challenge of the validity of tax proceedings. He established no defense to the action under any theory, by competent evidence.

We find no error in the first part of the decree which adjudges the respective parties to be the owners of the lands to which they established record title. The court committed error by attaching an addendum to the decree which purports to fix the boundary line at a point which divides the 2 feet in dispute, between the parties. The addendum to the decree is not supported by competent evidence. The plaintiffs' east boundary line is 89 feet east of the west line of Lot 5, and said line is the west boundary of defendant's land.

The first part of the decree is affirmed. The last portion on which plaintiffs' base their cross-appeal, is vacated, and the cause is remanded to the district court with directions to enter a new decree, omitting the portion excepted to on cross-appeal. Costs to respondents and cross-appellants.

PRATT, WOLFE, WADE, and LATIMER JJ., concur.