432 P.2d 334

**MUSIC SERVICE CORPORATION,**
a Utah corporation, Plaintiff
and Appellant,

v.

**Cleo WALTON, Defendant and Respondent.**

No. 10704.

Supreme Court of Utah.

Oct. 3, 1967.

17. 352 F.2d 251 (9th Cir. 1965), cert. denied 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966).

**18**

Beaslin, Nygaard, Coke & Vincent, Salt Lake City, for appellant.

Dwight L. King, Salt Lake City, for respondent.

CALLISTER, Justice:

The plaintiff, Music Service Corporation, brought this action initially for trespass to get the defendant, Cleo Walton, to remove his encroachment from a certain strip of real property. From a decision quieting title to the strip of land in the defendant the plaintiff prosecutes this appeal.

This dispute is over a long narrow strip of property about 12 feet wide which separates two tracts of land, tract A and tract B. The property is located at about 200 West 3900 South, Salt Lake County, Utah. The plaintiff is the present owner of tract B, located to the east of the disputed strip, while the defendant is the owner of tract A, located just to the west of the strip of land in question. In May of 1959 the defendant Cleo Walton purchased tract A. In 1960 the plaintiff's predecessor, P. L. Henderson, purchased tract B, which was located to the east of Walton's property but separated from it by the long 12-foot-wide strip. The property separating the above two tracts was marked by a hog-wire fence on the east side and, 12 feet west of that, by another hog-wire fence.

Sometime in 1960 Walton met with Henderson to decide who had rights to the strip which separated their properties. Both were aware at the time that the descriptions in their deeds did not include the 12-foot-wide strip and that their tracts were not contiguous. In order to have a common

boundary line between tract A and tract B, Walton and Henderson agreed to tear down both hog-wire fences and to construct a chain link fence marking a common boundary line between both tracts. Henderson proceeded to build the chain link fence approximately on the same line of the hog-wire fence which marked the east boundary of the disputed strip. Shortly after the fence was built Walton proceeded to move car bodies right up to the chain link fence and has continued to occupy the premises.

On June 10, 1965, the plaintiff, Music Service Corporation, claimed ownership of the strip and demanded that the defendant Walton cease and desist from occupying the 12-foot strip. Walton refused and the plaintiff brought suit for trespass to get rid of the encroachment.

At trial the plaintiff, in an effort to prove ownership, introduced into evidence a Uniform Real Estate Contract from White Investment Company describing about 11 acres of land which allegedly included the strip of land in dispute. The purchase from White took place on July 15, 1959. The 11 acres of property was located primarily south of tract A and tract B, but it extended northward separating the two tracts. The strip separating the Walton and Henderson tracts provided the only access to the balance of the 11 acres. The plaintiff contended that at the time it made the purchase the strip was still bounded by the two hog-wire fences. The Uniform

Real Estate Contract had an obligation against it in favor of C. W. Wilkins. This obligation was due to the fact that White, who had purchased the property from Wilkins in 1957, had not completely paid off the purchase price. The plaintiff, in order to clear up that defect, introduced the warranty deed from C. W. Wilkins to White. This deed was recorded on March 12, 1965. The record also indicates that after the plaintiff purchased the 11 acres from White it also purchased tract A from P. L. Henderson.

Walton denied that he had encroached on any of plaintiff's property and claimed superior right to the property up to the chain link fence on the basis that he had gained title by adverse possession, by agreement, and by acquiescence. Walton further asserted that the Wilkins deed to White was a wild deed.

The trial court found that, although the Wilkins deed to White described the disputed property therein, it was nevertheless a wild deed being a deed from a person not in the chain of title, and was therefore without any force or effect as far as conveying any interest to the disputed strip. The court further found that the Salt Lake County Recorder's records failed to reflect any gap between the two tracts and that the land had been inaccurately surveyed prior to the plats being made. On the basis of those findings the court quieted title to the strip in defendant Walton in accord-

ance with the 1960 agreement between P. L. Henderson and the defendant.

The plaintiff appeals primarily on two grounds. Plaintiff first contends that the trial court erred in not finding that it had title to the property in dispute. Connected with this charge, plaintiff contends that there was insufficient evidence in the record upon which the court could find that at the time Wilkins gave the deed to White, Wilkins did not own the property described and gave nothing more than a "wild deed." Plaintiff's next contention is that the trial court erred as a matter of law in finding that Walton's title was superior to the plaintiff Music Service Corporation's based on the 1960 boundary line agreement by Walton and Henderson.

■ In the present case both the plaintiff and the defendant claim title to the disputed strip from different sources, and not from any common grantor. Since each claims to be the owner, the burden is usually on each to make good by evidence of title. Since this case is in essence a quiet title action, each party should assume the burden of establishing by competent evidence its title to the land respectively claimed. *Gilpin Investment Co. v. Perigo Mines Co.* (Colo.), 421 P.2d 477 (1966); *Durkin v. Ward*, 66 Or. 335, 133 P. 345, 346 (1913). The justification for requiring each to prove his own title is that "an adjudication of title should be based upon some evidence." *Pitts v. Pitts* (Mo.), 388 S.W.2d 337 (1965).

We therefore proceed first to consider the title of plaintiff as shown by the record. The following language from the court in *Cottrell v. Pickering*, 32 Utah 62, 88 P. 696 (1907), indicates what a party must do in these disputes to prove title:

> * * * Of course, where one proves a perfect chain of paper title from its original source, no proof of actual possession at all is required. In such event the presumption would be all sufficient and the title would be a complete and perfect title. But, when this is not done, a title prima facie is shown by a grant from some one who held possession, or by such grant and possession under it by the grantee. As against a mere technical objection by anyone who, at the time the objection is made, appears to be a mere stranger to the title, such a prima facie title would seem quite sufficient. To require more against such an objector would require every one to prove a perfect chain of title as against every stranger making any kind of claim. This the law does not require. If the objector has a better or stronger title than the prima facie title proved, then he must show it, and until he does the prima facie title prevails.

In a similar vein the court in *Babcock v. Dangerfield et al.*, 98 Utah 10, 94 P.2d 862 (1939), indicated that while it was true that in an action to quiet title the plaintiff must survive by the strength of his own

title rather than the weakness of defendant's nevertheless all the plaintiff need do was to prove prima facie that he had title which, if not overcome by defendant, would be sufficient.

■ The record indicates that the plaintiff in this case failed to introduce into evidence its abstract of title. Therefore, instead of showing it had a perfect chain of title it chose instead to show a prima facie title. It introduced the Uniform Real Estate Contract from White to itself. It also introduced the deed from Wilkins to White. To show that it received a grant from one in possession, plaintiff had White testify that during the time he had title and just prior to the time he conveyed it to the plaintiff, he was in possession. However, even though White testified that he had possession, the trial court sitting alone without a jury found just the contrary. Since the question of possession is really one of fact to be determined by the trier of facts, we will not overturn these findings unless the record is without substantial evidence in the record to support it. In reviewing the record we find there was little support to establish White's possession. In fact, one of the witnesses who had lived in the vicinity since 1948, Mrs. Jean Hansen, stated that no one at any time had ever used the area between the original two hog wire fences. She testified also that the strip was completely obstructed by weeds, vines, and bushes, and that the only people she saw on the strip were kids playing. We therefore must conclude that there was sufficient evidence in the record from which the trial court could conclude that White did not have possession and, therefore, plaintiff failed to show even a prima facie claim to title, since it had not shown a grant from one who held possession.

■■ It should be noted, however, that the trial court erred in finding that the Wilkins deed to White was a "wild deed." The mere fact that the plaintiff failed to introduce the abstract was not grounds for finding that the deed under which it claimed was a wild deed. The record is absent any kind of a title search which would indicate whether or not the deed was wild. The only evidence upon which the court could have relied was the allegation by Walton that the deed was wild. Apparently Walton based that claim on the fact that the County Recorder's plat did not show any gap between tract A and tract B, plus supporting testimony from his own witness, Mr. Arnold W. Coon, a licensed civil engineer. Coon testified that at the defendant's request he examined the old plats to see whether or not any deed was found to cover the disputed strip. He stated that his search went back four or five years without finding any claim of ownership to that strip. A search based only on the last four or five years is hardly sufficient evidence to declare that a deed

is wild. The trial court's own findings indicate that the description in the Wilkins deed to White roughly described the area in dispute. This deed was recorded March 12, 1965. Since the deed was introduced into evidence, it would operate to discredit Coon's testimony that there was no claim of ownership to that strip during the last four or five years. Without more evidence in the record to show that the deed was "wild" the court erred in declaring it a wild deed.

■ We also find that the trial court was in error in finding that the area in dispute had been occupied by defendant and his predecessors in interest since 1948. The record indicates that defendant's own witness, Jean Hansen, testified that until 1959 no one had occupied the disputed strip. The record is clearly absent sufficient evidence to show that defendant had occupied said strip prior to 1960.

■ Although we find the trial court erred as to those findings, the fact remains that the plaintiff failed to establish title to the disputed strip, and that it must prevail on the strength of its own title, not the weakness of its opponent's. We now turn to an examination of the defendant's purported claim to the strip. It is true that in an action to quiet title, plaintiff must recover on the strength of his own title and that if he has not shown any title, he is not generally aggrieved by an adjudication of title in the defendants. Pitts v. Pitts, supra. It should be noted however, that the plaintiff will be permitted to attack a judgment which denied its claim to title where the basis of the attack was that the judgment entered was contrary to law. In the instant case the plaintiff is permitted to attack the judgment since the basis of its attack is that the judgment entered into was without support by case authority.

At trial the defendant argued that he had gained title to the property by adverse possession, by agreement and by acquiescence. He admitted and the trial court found that the description in his deed did not include the 12-foot strip in dispute. The court, nevertheless, found that the defendant should be granted judgment quieting title between them along the chain link fence pursuant to the 1960 agreement between Henderson and defendant. The court further found that the Salt Lake County Recorder's records failed to reflect any gap between the property of defendant and the property then owned by Henderson, and that the gap only exists because the land had been inaccurately surveyed prior to the plats being made.

We are unable to agree with the trial court that the defendant has established title to the disputed strip by agreement. As we stated previously there is not sufficient evidence that the Salt Lake County Recorder's records fail to reflect any gap. The court held that the Wilkins deed to

White roughly described the disputed strip. That deed was recorded and introduced into evidence. The record indicates that tract A, owned by Walton, and tract B, then owned by Henderson, were not contiguous at the time of the 1960 agreement. All of the cases cited by the defendant in support of the position that title was established by boundary line agreement were cases where the dispute was between adjoining landowners. In those cases the question was not who had right to surplus land not included in their deeds, but dealt only with boundary disputes between contiguous landowners. It should also be noted that in all of those cases the dispute was between parties to the agreement, which is not the case here. Music Corporation claims from White who was neither a party nor a privy to anyone connected with the 1960 agreement.

This court faced a similar question a few years ago involving a suit over a tract of land about two feet wide which was located between two tracts. Smith v. Nelson, 114 Utah 51, 197 P.2d 132 (1948). In that case both the plaintiff and the defendant claimed common title to the two-foot strip of ground on the theory of boundary line by agreement, based on a fence erected to settle a boundary dispute. In refusing the claim for title by agreement, the court stated the following principle which is certainly apropos here:

* * * Since Browning and defendant were not adjoining landowners, Browning could not have constructed the cement coping on his east line to settle any boundary dispute. Browning claimed title only to the fence. In fact, he and defendant were never adjoining landowners, for Aaron Jackson continued to be the record owner of the 2 foot strip of ground adjoining the land conveyed to Browning. Said strip separated the lands of defendant and Browning.

Since their lands were not contiguous based on the descriptions in their own deeds at the time Henderson and Walton met to decide on a common boundary, we must conclude that the trial court erred in quieting title to the strip in favor of defendant according to the 1960 agreement.

In oral arguments we were urged to take judicial notice of the abstract of title which the plaintiff failed to include in the record. Since the legislature has not yet given us the authority to take judicial notice of entries made in the records of county recorders, we declined to look to the abstract to see whether plaintiff had shown a record chain of title. See Holbrook v. Carter, 19 Utah 2d 113, 431 P.2d 123, August 21, 1967.

Neither party having established a right to the disputed strip, the case is in a state of limbo rendering it impossible

**24**

for this court, under the present state of the record, to render an opinion. Therefore, we remand the case for further proceedings so that the court can be fully informed before determining the respective rights of the parties. Dragos v. Russell, 1 Utah 2d 385, 276 P.2d 775 (1954).

Judgment reversed and case remanded. No costs awarded.

TUCKETT and HENRIOD, JJ., concur.

CROCKETT, C. J., concurs in the result.

ELLETT, Justice: (dissenting)

I dissent. I am unable to concur in sending this case back for a new trial. Neither party has asked this court or the court below for a new trial. Each has had a full opportunity to present all of the evidence which it had to present, and the fact that one party did not put in the abstract of title should be an indication that that abstract would not help its cause. Otherwise, we may rest assured it would have been before us.

No complaint is here made by either party that improper evidence was admitted. Therefore, I presume a new trial would pose exactly the same problem as that which faces us now. Each party before us avers that the evidence is sufficient to compel a finding in his favor, and if the parties are satisfied with the evidence which they gave to the court, we ought to be.

It is our duty to affirm the trial court if we can do so, even though it be on a different ground than that which he relied on to make his judgment. Here the defendant had been in possession of the disputed strip of land since 1959, and by having actual possession he cannot be ousted therefrom by someone who can show no better title than his. See 28 C.J.S. Ejectment § 36.

25 Am.Jur.2d Ejectment § 19 states the law as follows:

A well-established principle which has acquired the force of a maxim is to the effect that the plaintiff in ejectment can recover only on the strength of his own title, and not on the weakness of his adversary's. The defendant is not required to show title in himself, and he may lawfully say to the plaintiff, "Until you show some title, you have no right to disturb me." Thus, even against one without title, plaintiff cannot recover in ejectment unless he proves title or prior possession in himself; * * *

The main opinion says the plaintiff failed to show any title in himself. I agree with that statement and would affirm the trial court.