507 P.2d 368

**Louis Whitney OWEN, Plaintiff and Respondent,**

**v.**

**Louis Wetzel OWEN and First Security Bank of Utah, N. A., a corporation, Defendants and Appellants.**

**No. 13050.**

Supreme Court of Utah.

March 8, 1973.

---

Samuel E. Blackham, of Jensen & Lewis, Salt Lake City, for Louis Wetzel Owen.

James L. Wilde, of Ray, Quinney & Nebeker, Salt Lake City, for First Security Bank of Utah.

CROCKETT, Justice:

Plaintiff, Louis *Whitney* Owen, sues his son, Louis *Wetzel* Owen, for fraudulent endorsement and conversion of a certificate of deposit of $4,000 in defendant First Security Bank, which had been issued jointly to plaintiff and Myrtes W. Owen, who was his former wife, and was also the mother of Wetzel. The trial court made findings and entered judgment in favor of the plaintiff and against the son, Louis Wetzel Owen; and against the bank for negligence in paying out the money to Louis Wetzel Owen, and also in favor of the bank on its cross-complaint against the son for having wrongfully withdrawn the money. The propriety of these judgments is attacked on this appeal.

Louis Whitney Owen and Myrtes W. Owen had been divorced in 1938. However, the evidence is that there had been a close relationship existing between them, which continued up to the time of her death in 1970. About two years before that event, Myrtes had talked to plaintiff, Louis Whitney Owen about finances. She decided to withdraw an account of $4,192.-24 from another bank and deposited it in First Security. They went there together and purchased the certificate of deposit of concern here which listed as the owners "Myrtes W. Owen and L. W. Owen." A joint bank account of the remaining $192.24 was also opened and an arrange-

ment made that the interest from the certificate of deposit would be credited to that account. The evidence indicates that Myrtes had stated that the funds should be used either for herself or the plaintiff if either had to go to a rest home. It is unquestioned that the L. W. Owen referred to in these accounts was plaintiff, Louis *Whitney* Owen, and not the son, Louis *Wetzel* Owen.

· In connection with the purchase of the certificate of deposit Myrtes W. Owen and Louis Whitney Owen signed this agreement:

> The undersigned agree with First Security Bank . . . that the time certificate of deposit . . . may be paid by the Bank to any one of the undersigned and the payment . . . shall fully release and discharge the Bank to the extent of the amount paid . . ., and, in the event of the death of any of the undersigned, payment to the survivor or survivors of shall likewise release and discharge the Bank from all liability to the decedent, his or her estate, successors or assigns.

The passbook was kept by the plaintiff; the certificate of deposit was placed in Myrtes Owen's safety deposit box at the defendant bank. Defendant Louis Wetzel Owen had· a key to the box and after his mother's death he opened it. Notwithstanding the fact that his father had told him that the father owned the certificate of deposit, defendant Louis Wetzel Owen presented it to the bank, signed for and received the proceeds. He deposited the money in his own account in another bank where it has been garnished and, through arrangements of the respective attorneys, is being held pending the outcome of this case.

■ The position essayed by the defendant Louis Wetzel Owen is: that his mother was the owner of the $4,000; that she did not by gift or otherwise transfer the ownership to his father, plaintiff Louis Whitney Owen; that as the sole heir of his mother, and thus her "legal representative" her property passed to him as equitable owner on her death; that he was therefore entitled to withdraw the money from the bank and keep it. In support of that position defendant's brief states that the agreement is not sufficient for the:

> . . . creation of a joint tenancy, but probably satisfies two of the four elements thereof, viz., time and title; but certainly it does not establish the remaining two elements, "interest" and "possession."

■ In so arguing the defendant attempts improperly to insinuate into this problem the concept of the four unities of "title, interest, time and possession" which were characteristic of joint tenancies and "estates by the entirety" with right of sur-

vivorship as they existed at common law.[1] Bank accounts and deposits of the character here in question are not dependent upon those rigidities. They are created by contract whose terms fix the conditions upon which the money is deposited and may be withdrawn, and the rights of the parties between themselves. They should be enforced according to the intent so expressed the same as any other duly executed written contract.[2] The signing of the agreement quoted above by Myrtes Owen containing the recital that "in the event of the death of . . . [herself] . . . payment to the survivor . . . shall release and discharge the Bank" seems a plain enough expression of intent that if the other signator should survive, the money was to be paid to him.

■ We see nothing in this case to persuade us to disagree with the conclusion of the trial court: that the agreement was intended to create an interest with the right of survivorship in the plaintiff, Louis Whitney Owen.

■ In regard to the obligation of the bank: there is no question but that it would be "fully released and discharged" upon the payment to either signator during life, or in the event of the death of one, "to the survivor." The difficulty here is that it did not pay to either signator. Its clerk simply assumed that the L. W. Owen (the son Louis *Wetzel* Owen) who presented the certificate, and signed L. W. Owen, was the same L. W. Owen (the father Louis *Whitney* Owen) whose signature appeared in its records, and failed to compare the signature with that on the signature card. We think there is an adequate basis in the evidence for the trial court's finding that the bank was negligent and for rendering the judgment against the bank in favor of the plaintiff. It may be of some comfort on this phase of the case to reflect that the money is being held under garnishment and is to be paid over to the plaintiff.

From what has been said above it should be clear that the judgment of the bank on its cross-complaint against the son, Louis Wetzel Owen, for wrongfully withdrawing the money is so patently correct that no other comment is required.

Affirmed. Costs to plaintiff (respondent); and to the bank as against defendant Louis Wetzel Owen.

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

1. In our statutory law Sec. 57–1–5, U.C.A. 1953, was amended by Ch. 93, S.L.U.1953, to eliminate the necessity of those unities.

2. See Hanks v. Hales, 17 Utah 2d 344, 411 P.2d 836.