507 P.2d 1026

**FINANCIAL CORPORATION OF AMERICA, Plaintiff and Respondent,**

v.

**PRUDENTIAL CARBON AND RIBBON COMPANY et al., Defendants and Appellants.**

No. 12774.

Supreme Court of Utah.

March 15, 1973.

---

1. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493 (1967).

2. Webster's Third New International Dictionary.

Dwight L. King, Salt Lake City, for appellants.

Benjamin Spence and Roy G. Haslam, Salt Lake City, for respondent.

ELLETT, Justice.

This is an appeal by the defendants Bluth and Wilkerson from a judgment rendered by the court on a guaranty given to the plaintiff for a valuable consideration. Defendant Bluth denies that his signature appears on the guaranty and claims that the statute of frauds renders the guaranty unenforceable.

Wilkerson's defense is that he signed because of a fraudulent representation made to him by the plaintiff that Bluth had already signed the guaranty.

The evidence shows that Bluth, Wilkerson, and Bunker as officers and directors of the corporate defendant desired financial assistance in securing equipment costing some $7,000. Bluth contacted Eames, a lease-broker, to see if he could arrange the required financing. Eames told Bluth that to get the financing it would be necessary for the three interested parties to give personal guaranties. Bluth told Eames that the three would give personal guaranties. The three gave financial statements to Eames; and since Bluth's assets were chiefly stock in the Draper National Bank, of which he was president, he also gave a financial statement of the bank.

Eames was able to arrange with the plaintiff the financial help for the corporate defendant if Bluth, Wilkerson, and Bunker would each sign a personal guaranty. Bluth told Eames to prepare the lease and the guaranties and he would see that they were signed. Eames prepared the papers and sent them by Campbell, his employee, to Bluth for signature. Bluth and several others were in conference when Campbell arrived, and the secretary of Bluth was given the papers and told that Bluth was expecting them and would sign them. She entered the conference room and soon returned with the documents all signed.

Eames sent these documents to the plaintiff, and plaintiff's president came to Salt Lake to inspect the plant and proposed business of the corporate defendant. He met with Bluth, Wilkerson, and Bunker and discussed the financial arrangement including the personal guaranties. None of the individual defendants said a thing about not being bound by the guaranties. The president returned to Chicago, and the deal was approved. Based upon the guaranties given it, the plaintiff bought the equipment and leased it to the corporate defendant.

The question before us is this: Is Bluth estopped to deny that his signature appears on the guaranty?

In speaking of equitable estoppel, this court in the case of Farmers & Merchants Bank v. Universal C. I. T. Credit Corp.[1] adopted the following language from J. T. Fargason Co. v. Furst, 8 Cir., 287 F. 306, 310:

> Equitable estopped is bottomed upon the notion that, when one person makes representations to another which warrant the latter in acting in a given way, the one making such representations will not be permitted to change his position when such change would bring about inequitable consequences to the other person, who

1. 4 Utah 2d 155, 159, 289 P.2d 1045, 1048 (1955).

relied on the representations and acted thereon in good faith. . . . The representations made must be in themselves sufficient to warrant the action taken, and their sufficiency is a judicial question. . . .

Again in Grover v. Garn [2] we said:

Relative to the second point that the evidence provides no basis for the ruling that the corporation is estopped to deny the validity of the contract, we have this to say, that under the doctrine or principle of estoppel in pais one may by his acts or conduct away from the court prevent himself from denying in court the effect or result of those acts. We respect a definition of long standing taken from Black's Law Dictionary:

An estoppel by the conduct or admissions of a party . . . it is, and always was, a familiar principle in the law of contracts. It lies at the foundation of morals and is a cardinal point in the exposition of promises, that one shall be bound by the state of facts which he has induced another to act upon.

■ The evidence given to the trial court in the instant case warranted the findings made which he summarized in his conclusions as follows:

That defendant D. C. Bluth, on or about the 20th day of July, 1967, executed and delivered to plaintiff in conjunction with the execution of a lease agreement between plaintiff, Financial Corporation of America, and Prudential Carbon & Ribbon Company, by which he unconditionally guaranteed the payment of the said lease in the event it became in default and is liable to plaintiff for the balance due thereon. That the said guarantee agreement was executed in such a manner as to appear to not be the signature of defendant Bluth but was presented to plaintiff with the representation that the signature thereon was genuine and that the said defendant D. C. Bluth is estopped to deny that the signature thereon is not genuine and is obligated under the terms and conditions of the said guarantee agreement.

■ Bluth in acting as the court found he did is estopped to deny his signature on the guaranty which he purported to sign; and since Bluth is bound on the guaranty, Wilkerson's defense is without merit.

The judgment is affirmed. Costs are awarded to the respondent.

CALLISTER, C. J., and CROCKETT and TUCKETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent, suggesting that as to the defendant Bluth, the main opinion is dead wrong.

2.  23 Utah 2d 441, 447, 464 P.2d 598, 602 (1970).

Bluth's inked name on a purported guaranty obviously was not his signature. No effort to prove otherwise appears in this record. The thrust of the main opinion is that Bluth permitted someone to sign his name and hence he is estopped to deny the obligation. There is no competent, substantial evidence to support this conclusion. The only thing that might come close is some self-serving hearsay testimony elicited by some finder's fee merchants. There is no evidence of any amanuensis relationship created by Bluth. No estoppel is reflected. There is no evidence that Bluth guaranteed anything or represented anything, intending that the plaintiff act thereon to its detriment. The only hint of it is an unproven peripatetic flunky's testimony as liaison between his partnership, the plaintiff and a secretary purported to be Bluth's, who went somewhere and came back from somewhere with a so-called guaranty. This star witness at the trial, upon whose testimony the trial court and this court must rely to hold Bluth liable, was to the effect that *he witnessed Bluth's signature*. The uncontradicted evidence, however, clearly showed that he had never seen, heard of or known the man. The so-called guaranty, which purportedly binds Bluth, according to the main opinion, at its inception had no date and had no liability recited therein. This was conclusively shown to be the fact when *the original* showed up at the trial as an exhibit, showing no date, and no liability upon which this ill-advised case rests, —exposing and reflecting some sort of legerdemain upon which this court now bases its affirmance.

In my opinion the evidence in this case does not come within seven leagues of suggesting the gratuity that such evidence supports the trial court's findings as to Bluth. The quantitative and qualitative standards needful to prove an estoppel, by clear and convincing or any other kind of evidence, completely are absent here in my opinion, and I think the principle involved as to an estoppel is the product of judicial myopia while reviewing the undisputed facts. Reference in the opinion and the quotations given at some length from a lower federal court and our own case of Grover v. Garn, is but an apologia for an erroneous analysis of the facts as I see it, and is nothing more than inapropos hornbook stuff, which, having been quoted, actually points up its inapplicability and unrealistic error indulged in this case.

One may wonder how this case can square with our most recent case of Owen v. Owen, this Court, 507 P.2d 368, published on the 8th day of March, 1973, where we had no difficulty whatever in rejecting the idea that liability could be bottomed on a signature reputedly that of a father that was written by the son who had the indicia of ownership,—a key to a lockbox and a passbook, which we said was an intolerable representation.

Withal the above, the Statute of Frauds (Title 25, Utah Code Annotated 1953) requiring a writing to bind one for the debt of another, was pleaded,—and any such writing cannot be found in this record. No treatment of this significant defense is even mentioned in the opinion. Such defense appears to have some merit, but is mentioned nowhere, nor is it explained or specifically rejected.

I am of the opinion that as to Bluth, the case should be reversed with costs to Bluth.