2003 UT App 283

Robert W. DUNLAP and Kathy L. Dunlap, individuals; and United Park City Mines Co., a Delaware corporation, Plaintiffs and Appellees,

v.

STICHTING MAYFLOWER MOUNTAIN FONDS, a Netherlands association; Mayflower Recreational Fonds, a Netherlands association; Consolidated Mayflower Mines, Inc., a Utah corporation; Cooperative Centrale Raiffeisen Boerenleenbank, B.A., a Netherlands corporation; Newpark Mining Co., a dissolved Utah corporation; Lon Investments, a dissolved Utah corporation; and Murray First Thrift & Loan Co., a Utah corporation, Defendants and Appellants.

No. 20010724–CA.

Court of Appeals of Utah.

Aug. 7, 2003.

E. Craig Smay, Salt Lake City, for Appellants.

Val R. Antczak and Laura S. Scott, Parsons Behle & Latimer, Salt Lake City, for Appellees.

Before Judges DAVIS, GREENWOOD, and ORME.

## OPINION

### GREENWOOD, Judge.

¶ 1 This case comes before the court on appeal from a grant of summary judgment for Plaintiffs, Robert W. Dunlap, Kathy L. Dunlap, and United Park City Mines Company (collectively, the Dunlaps). Defendants, Stichting Mayflower Mountain Fonds and Mayflower Recreational Fonds (collectively, Mayflower), appeal the trial court's grant of

summary judgment quieting title to a patented mining claim (the Marsac Lode) [1] in Summit County, Utah, in the Dunlaps. We reverse.

## BACKGROUND

### I. Chain of Title to the Marsac Lode

¶ 2 Both parties assert ownership of the Marsac Lode through differing chains of title.

#### A. Dunlaps's Chain of Title

¶ 3 The Dunlaps assert that their chain of title to the Marsac Lode derives from numerous transfers, commencing April 30, 1932, when Star of Utah Mining Company transferred, by recorded deed, its interest in the Marsac Lode to New Park Mining Company of Utah (New Park–Utah). Soon thereafter, on May 16, 1932, New Park–Utah transferred, by recorded deed, its interest in the Marsac Lode to New Park Mining Company of Nevada (New Park–Nevada).[2]

¶ 4 On May 2, 1938, Park City Development Company (Park City Development) deeded the Marsac Lode to International Smelting and Refining Company (International Smelting),[3] to secure repayment of $3,000 Park City Development borrowed from International Smelting to purchase the Marsac Lode from the "then owner." [4] After 1939, all taxes on the Marsac Lode were assessed to International Smelting and its successors in interest.

¶ 5 On March 29, 1941, International Smelting brought suit to foreclose the lien created by the May 2, 1938 deed with Park City Development (1941 Foreclosure Action). The complaint, describing all corporate defendants as Utah corporations, named both Park City Development and "New Park Mining Company, a corporation," as defendants.

---

1. The Marsac Lode consists of approximately five acres in the Flagstaff Mountain area of Summit County, Utah, described as Marsac Lode, Lot No. 61.

2. New Park–Utah and New Park–Nevada were incorporated within days of each other and the same individuals sat on both companies' board of directors.

3. There is no recorded deed from New Park–Nevada or any other person or entity to Park City Development for the Marsac Lode.

4. Through 1938 all taxes were assessed to New Park–Nevada and both parties admit that as of May 2, 1938, New Park–Nevada was the record owner of the Marsac Lode.

On the same day the complaint was filed, "New Park Mining Company" disclaimed any interest in the Marsac Lode. The court subsequently ordered a sheriff's sale of the Marsac Lode. International Smelting was the highest bidder at the sheriff's sale. On January 19, 1942, a Sheriff's Deed was issued, conveying the Marsac Lode to International Smelting. In 1987, Atlantic Richfield Company, a successor by merger of Anaconda Company, which was in turn a successor by merger of International Smelting, quitclaimed its interest in the Marsac Lode to AMI Associates (AMI). All taxes were thereafter assessed to AMI. Through two deeds dated April 18, 1994 and November 8, 1999, AMI quitclaimed its interest in the Marsac Lode to the Dunlaps. All taxes from 1993 to the present have been assessed to and paid by the Dunlaps.

### B. Mayflower's Chain of Title

¶ 6 Mayflower's chain of title also originates from New Park–Utah's deed of the Marsac Lode to New Park–Nevada. However, Mayflower argues that New Park–Nevada never divested its ownership of the Marsac Lode until 1972, when it conveyed the property by recorded deed to Lon Investment (Lon). In October 1981, a quitclaim deed was recorded conveying the Marsac Lode from Lon to Mayflower.

### II. Procedural History

¶ 7 In July 2000, the Dunlaps filed a complaint seeking to quiet title to the Marsac Lode. The Dunlaps filed a Motion for Summary Judgment asserting fee simple ownership of the Marsac Lode through deeds from New Park Mining Corporation, International Smelting, and AMI. Mayflower filed a Cross Motion for Summary Judgment, asserting that their title to the property was superior through deeds from New Park–Nevada and Lon.

¶ 8 After a hearing, the trial court granted summary judgment for the Dunlaps, and entered Findings of Fact, Conclusions of Law and Order on December 20, 2001. Although concluding that the Dunlaps could not establish a claim of adverse possession or waiver, the court determined that the 1941 Foreclosure Action foreclosed New Park–Nevada's interest in the Marsac Lode. The court also concluded that New Park–Nevada's claim was barred by estoppel in pais. The court ordered quiet title to the Marsac Lode in the Dunlaps. Mayflower appeals.

### ISSUE AND STANDARD OF REVIEW

¶ 9 Mayflower appeals the trial court's grant of summary judgment to the Dunlaps, quieting title to the Marsac Lode in the Dunlaps. "Summary judgment is granted only when 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" *Bearden v. Croft,* 2001 UT 76, ¶ 5, 31 P.3d 537 (quoting Utah R. Civ. P. 56(c)). "In reviewing a grant of summary judgment, [this court] ... gives 'no deference to the trial court's conclusions of law: those conclusions are reviewed for correctness.'" *Id.* (quoting *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 636–37 (Utah 1989)).

### ANALYSIS

¶ 10 Mayflower contends that the trial court erred in determining that the 1941 Foreclosure Action terminated New Park–Nevada's interest in the Marsac Lode.[5] "A quiet title action requires the application of a rule of law to decide ownership of the property in question." *Salt Lake City v. Silver Fork Pipeline Corp.,* 2000 UT 3, ¶ 18, 5 P.3d 1206. Where, as here, each party claims ownership through different chains of title, "each party should assume the burden of

---

5. Mayflower also appeals the trial court's conclusion that they are barred from asserting title by the doctrine of estoppel in pais. *See Financial Corp. of Am. v. Prudential Carbon & Ribbon Co.,* 29 Utah 2d 238, 507 P.2d 1026, 1027 (1973) (" '[U]nder the doctrine or principle of estoppel in pais one may by his acts or conduct away from the court prevent himself from denying in court the effect or result of those acts.'" (citation omitted)). The trial court's Findings of Fact include no findings relating to estoppel and the undisputed facts also do not support estoppel. Furthermore, estoppel is inconsistent with the trial court's determination that the Dunlaps had not established adverse possession or waiver. We therefore reverse the trial court's conclusion that Mayflower is estopped from claiming title.

establishing by competent evidence its title to the land respectively claimed." *Music Serv. Corp. v. Walton*, 20 Utah 2d 16, 432 P.2d 334, 336 (1967). We disagree with the trial court's determination that Mayflower's claim was terminated by the 1941 Foreclosure Action for two reasons: (1) Park City Development did not have a recorded interest in the Marsac Lode to transfer to International Smelting, and (2) foreclosure cannot be used to eliminate the interest of one with a superior recorded interest.

¶ 11 Both parties agree that New Park–Nevada was the record owner of the Marsac Lode in 1938, when the Park City Development deed purporting to grant a mortgage interest to International Smelting was created. However, no recorded deed exists between New Park–Nevada and Park City Development for the Marsac Lode. In 1938, the recording statute in effect was similar to Utah's current race-notice statute.[6] The former statute stated:

Every conveyance of real estate hereafter made, which shall not be recorded as provided in this title, shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded.

Utah R.S. § 78–3–3 (1933).[7] Under this statute, only a recorded deed from New Park–Nevada to Park City Development could have protected Park City Development and those claiming under it from recorded subsequent transfers by New Park–Nevada. Because there is no such recorded deed, the Dunlaps's ownership claim is based merely on a stray title. *See Gregerson v. Jensen*, 669 P.2d 396, 398 (Utah 1983) (stating buyers "did not obtain the statutory protection enjoyed by subsequent purchasers ... because they did not qualify for that protection by recording their own conveyance (or contract)

as·required by [section] 57–3–3. As a result, the recording acts do not dictate the outcome of this controversy" (footnote omitted)).

¶ 12 The Dunlaps, however, argue that language in the deed from Park City Development to International Smelting, referring to Park City Development's purchase of the Marsac Lode from the "then owner," could only mean that Park City Development purchased the property and obtained a deed from New Park–Nevada. However, a deed, if one ever existed, was never recorded. "[I]f the grantee fails to record, he assumes the risk of a subsequent grantee of the same land acquiring superior rights to his by recordation." *Horman v. Clark*, 744 P.2d 1014, 1016 (Utah Ct.App.1987) (quotations and citations omitted). Without a recorded deed, we cannot determine that the transfer from New Park–Nevada to Park City Development took place. It may just as well have been that a third party fraudulently caused Park City Development to believe they had purchased the Marsac Lode from its "then owner." Regardless, when International Smelting brought suit for foreclosure of the mortgage deed, an inspection of the record would have provided notice to International Smelting that the record owner of the Marsac Lode was New Park–Nevada, not Park City Development. *See U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 35, 990 P.2d 945 ("[C]onstructive notice is imparted when documents are properly recorded."). Having no recorded deed to the Marsac Lode, Park City Development had no protected title to transfer or mortgage as security for a loan.

¶ 13 Where no recorded deed exists between New Park–Nevada and Park City Development, the 1941 Foreclosure Action could not affect the record owner of the Marsac Lode, New Park–Nevada, which was the holder of a superior recorded interest. First, the record indicates New Park–Neva-

---

**6.** Utah Code Ann. § 57–3–103 (2000) states:
Each document not recorded as provided in this title is void as against any subsequent purchaser of the same real property, or any portion of it, if:
(1) the subsequent purchaser purchased the property in good faith and for a valuable consideration; and

(2) the subsequent purchaser's document is first duly recorded.

**7.** The recording act and law of record priorities apply to mortgages as well as to deeds. *See Federal Land Bank of Berkeley v. Pace*, 87 Utah 156, 48 P.2d 480, 482 (1935).

da was not properly named as a party defendant. The complaint referred to the corporate defendants as Utah corporations—New Park–Nevada was a Nevada corporation—and named only Park City Development and "New Park Mining Company, a corporation," as defendants. When the holder of a recorded interest is not joined in an action to foreclose, the foreclosure does nothing to affect its interest in the property. *See Mickelson v. Anderson*, 81 Utah 444, 19 P.2d 1033, 1036 (1932) ("Respondent, while seeking to foreclose her mortgage ... failed to effect a foreclosure because the owner of the property was not a party to the action; hence the decree of foreclosure was void and of no effect ...."); *see also Reader v. District Court*, 98 Utah 1, 94 P.2d 858, 861 (1939) (quoting *Mickelson* ).[8]

¶ 14 This rule is applicable here. Because New Park–Nevada was not properly named and joined as a party, the 1941 Foreclosure Action could have no effect on New Park–Nevada's interest, which was deeded to Mayflower through subsequent recorded transfers.

■ ¶ 15 Second, and most importantly, a mortgage foreclosure action can only affect the interests of a mortgagor and others who hold subsequent and inferior interests to the mortgagee.

> The general rule is that a mortgage may be foreclosed against the owner of the equity of redemption or any person whose rights are subordinate to the mortgage, but not against one to whose rights the mortgage is subject, for a foreclosure is not the proper proceeding in which to litigate questions of the mortgagor's title as against strangers to the mortgage who claim a superior title....

59 C.J.S. *Mortgages* § 550 (1998); *see also* 4 Richard R. Powell, *Powell on Real Property* § 37.37[7] (Michael Allan Wolf ed., Matthew Bender 2003) ("[S]enior interests cannot be affected by the foreclosure[,] ... the rights of holders of paramount title ... are not

within the scope of the action."). Consequently, a party with an interest superior to that of the mortgagee is not a necessary party in a foreclosure action. *See Graham v. Oakden*, 51 Utah 476, 170 P. 451, 452 (1917) ("It is a fundamental principle in proceedings to foreclose a mortgage that prior lienors or incumbrancers are not necessary parties to the proceedings."); *see also* Utah Code Ann. § 78–37–3 (2002) (addressing necessary parties in actions for mortgage foreclosure). Furthermore, "an action to determine adverse claims cannot be maintained against the holder of the legal title by one who has a mortgage lien." *Fields v. Cobbey*, 22 Utah 415, 62 P. 1020, 1021 (1900). Here, Park City Development's interest in the Marsac Lode was subsequent and inferior to that of New Park–Nevada. It is undisputed that New Park–Nevada owned the Marsac Lode pursuant to a recorded deed, prior to the time Park City Development purported to mortgage its unrecorded interest to International Smelting. Therefore, International Smelting could not use its foreclosure action to extinguish New Park–Nevada's superior title to the property. Even if International Smelting had properly joined New Park–Nevada with the 1941 Foreclosure Action, the court in the 1941 Foreclosure Action could not have determined New Park–Nevada's interest in the Marsac Lode as it was not a party to the mortgage and had title that was superior to that of International Smelting. Consequently, the trial court erred in determining that the 1941 Foreclosure Action foreclosed New Park–Nevada's interest in the Marsac Lode.

## CONCLUSION

¶ 16 Mayflower's chain of title to the Marsac Lode is superior to that of the Dunlaps. The Dunlaps's claim is through an unrecorded transfer, which, by virtue of the recording act, is inferior to the recorded transfers by which Mayflower holds title to the property. Additionally, the 1941 Foreclosure Action did not affect New Park–Nevada's interest in the

---

**8.** The Dunlaps argue that New Park–Nevada had actual knowledge of the foreclosure action and did nothing to impede its progress. This argument is based on New Park–Nevada and New Park–Utah having the same individuals associat-

ed with both companies. Even if knowledge gave rise to some sort of affirmative duty, the argument is based on conjecture and not the extant record of the foreclosure action.

Marsac Lode because it was not properly joined as a party. Furthermore, the 1941 Foreclosure Action could not affect the interests of New Park–Nevada as it had recorded title to the property that was superior to that of the mortgagor, Park City Development. Therefore, the Dunlaps's chain of title is flawed, and Mayflower's chain of title is "establish[ed] by competent evidence." *Music Serv. Corp. v. Walton*, 20 Utah 2d 16, 432 P.2d 334, 336 (1967). Consequently, we reverse the decision of the trial court granting summary judgment to the Dunlaps. We remand for further proceedings consistent with this opinion.

¶17 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.